[No. B052986. Second Dist., Div. Seven. June 25, 1992.]

LOIS N. ROWE, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

Alexander L. Mazzia, Jr., for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone and Margaret R. Miglietta for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Plaintiff appeals from judgment on the pleadings entered in favor of defendant on her complaint for declaratory relief and breach of insurance contract. The only issue on appeal is whether the trial court properly concluded that the uninsured motorist provisions of plaintiff's policy did not afford coverage because plaintiff's damages were not "caused by accident and [did not] arise out of the . . . use of the uninsured motor vehicle."

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges the following: On June 28, 1986, Roger C. Rowe, plaintiff's husband, was a customer at the Rendezvous Lounge (Lounge) in Torrance; at 1 p.m., he became ill and unable to drive; an employee of the Lounge asked two customers to take Rowe home; one customer, Gloria Hite, drove Rowe's 1979 Cadillac, insured by defendant, with Rowe in the backseat; another customer, Theresa Deguevara, followed Hite in her own vehicle, which was uninsured; Hite and Deguevara brought Rowe to an intersection in Torrance "and negligently left him in the back of his car in a semi-conscious state, with windows closed. . . . At said time and place, as a result of the aforementioned conduct, Roger C. Rowe died of hyperthermia."

Plaintiff submitted a claim to defendant under the uninsured motorist coverage of her policy and demanded the $15,000 policy limit; defendant advised plaintiff that it did not consider the incident to be covered by the uninsured motorist coverage; plaintiff then demanded arbitration; defendant refused to submit the matter to arbitration. Thereafter, plaintiff filed the instant complaint containing a cause of action for declaratory relief and a cause of action for breach of insurance contract; the insurance policy was attached as an exhibit to the complaint and the uninsured motorist provisions of the policy were recited therein. The policy provides in pertinent part that "We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle."

Defendant moved for judgment on the pleadings on the ground that the face of the complaint reveals that plaintiff's claim is outside the scope of

uninsured motorist coverage in that as a matter of law the death of Mr. Rowe did not arise out of the ownership, maintenance or use of an uninsured motor vehicle. After hearing, the court granted the motion. Judgment was entered in favor of defendant; plaintiff appealed from the judgment.

## I

### STANDARD OF REVIEW

■ "The standard of review for a judgment on the pleadings is the same as for a judgment following sustaining of a demurrer; we look only to the face of the pleading under attack." (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738].) All facts alleged in the complaint are admitted for purposes of the motion and the court determines whether these facts constitute a cause of action. (*Id.* at p. 955.)

■ " 'The rights of the parties are to be determined by the terms of their policy, provided such policy grants benefits equal to or greater than is required by the Uninsured Motorist Act. [Citations.]' " (*Utah Property & Casualty Ins. etc. Assn.* v. *United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010, 1015 [281 Cal.Rptr. 917].)

Vehicle Code section 11580.2 "must be interpreted in the light of its legislative purpose. That purpose is 'to minimize losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists, . . .' [citation] and to afford 'insurance against damage to the insured by a noninsured vehicle.' [Citations.] The pertinent section of the Insurance Code serves the purpose for which it was enacted only if its scope is limited to that of requiring reimbursement to the insured by his own carrier of the type of loss which would have been covered by an automobile liability policy had the uninsured motorist been in fact insured." (*Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570, 573 [90 Cal.Rptr. 654].)

"Such coverage is not intended to—and does not—act as a substitute for general (and not merely automotive) liability coverage of persons . . . who, by chance, happen also to be uninsured motorists." (*State Farm Mut. Auto. Ins. Co.* v. *Spann* (1973) 31 Cal.App.3d 97, 100 [106 Cal.Rptr. 923].)

Appellant herein makes no claim that the uninsured motorist provisions of her policy are lesser than, or greater than, are required by the Uninsured Motorist Law; accordingly, for purposes of this appeal, we assume that the policy provisions are consistent with statute. In light of the foregoing

principles, we address the only issue as framed by appellant: "[W]hether the injury caused to decedent was caused by accident and arose out of the ownership, maintenance, or use of the uninsured motor vehicle driven by Theresa Deguevara." As impliedly conceded by the parties, a resolution of this issue is dispositive of both causes of action of the complaint.

II

INJURY DID NOT ARISE OUT OF USE OF UNINSURED MOTOR VEHICLE

A. *"Use" Under Uninsured Motorist Provisions*

The parties bring to our attention two cases addressing the issue of "use" of an uninsured motor vehicle under uninsured motorist provisions. Neither supports coverage in this case. In *Farmers Ins. Exchange* v. *Hansel, supra,* 12 Cal.App.3d 570, summary judgment was upheld in favor of the insurer in a situation where the appellant and an uninsured motorist, Stevens, each alighted from his respective vehicle and had an altercation; Stevens broke a bottle on the bumper of his car and struck appellant with the bottle. The court in *Hansel* reasoned: "Granting the validity of appellant's reasoning that, in a sense, the uninsured automobile was 'used' by Stevens when he stabbed appellant with the broken bottle, we nevertheless must reject appellant's conclusion that the use was within the category covered by an automobile liability policy. . . . Injury arising out of the use of an automobile as an instrument to create a weapon in the form of a broken bottle and as a shield for an assault with that weapon is not the form of loss for which the automobile liability policy may reasonably be expected to provide indemnity." (12 Cal.App.3d at p. 574.)

Although appellant distinguishes *Hansel* on the ground that the death of decedent in the instant case was caused by negligence and not an intentional assault, appellant fails to establish that the *use* of the uninsured automobile in the instant case is within the category reasonably contemplated to give rise to coverage under the uninsured motorist policy.

In *State Farm Mut. Auto. Ins. Co.* v. *Spann, supra,* 31 Cal.App.3d 97, the court held that appellant "has failed to prove a causal connection between his injury and an alleged 'use' or 'maintenance' by Mendoza of the uninsured Thunderbird." (31 Cal.App.3d at p. 101.) In *Spann,* appellant was driving his insured automobile on the freeway when he struck Mendoza, on foot on the freeway with a .28 percent blood-alcohol level; Mendoza, who died from injuries in the accident, was found 34 feet south of his uninsured Thunderbird parked on the freeway shoulder; Spann's vehicle went out of control,

causing injury to Spann, who claimed coverage under the terms of his uninsured motorist policy. In affirming the judgment in favor of State Farm, the Court of Appeal in *Spann* noted that although the trial court inferred that the Thunderbird had brought Mendoza to the scene of the accident, there was no evidence in the record "which provides any clue as to the proximity of Mendoza to his Thunderbird" at the time of the accident. (*Id.* at p. 99.)

Although the instant case is factually distinguishable from *Spann*, that case offers no rationale to support appellant's argument that decedent's death arose out of the "use" of Deguevara's uninsured vehicle within the terms of the uninsured motorist provision.

Because the purpose of uninsured motorist coverage is to require "reimbursement to the insured by his own carrier of the type of loss which would have been covered by an automobile liability policy had the uninsured motorist been in fact insured" (*Farmers Ins. Exchange* v. *Hansel, supra,* 12 Cal.App.3d 570, 573), we look for guidance to cases discussing the concept of "use" of a vehicle within the meaning of the liability provisions of automobile insurance policies. Although the following cases often involve fact situations as unique as those here, we do not intend to imply that the facts there are analogous to those here; rather, we discuss these cases to ascertain a framework to analyze the issue of causation.

B. *"Use" of Automobile Under Liability Provisions*

In *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], Partridge was driving his insured automobile with two friends in the front seat and hunting jackrabbits by shooting out of the windows with a pistol he had modified to have "hair trigger action"; the gun was lying in Partridge's lap or resting on the steering wheel pointed at one of the passengers when the vehicle hit a bump; the gun discharged and caused injury to the passenger. All parties conceded coverage under the automobile liability policy; the insurer contested coverage for the accident under a homeowner's policy. Although the court in *Partridge* stated that the controversy focused solely upon the applicability of the homeowner's policy, the court did discuss coverage under the automobile policy: "Past California cases have established beyond contention that this language of 'arising out of the use,' *when utilized in a coverage or insuring clause of an insurance policy,* has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle. . . . Although our cases have not yet defined with absolute precision the requisite causal connection necessary to invoke such a coverage clause, we have no doubt that in the instant case the role played by the use of the car—constituting a

substantial, and indeed, a proximate cause of the accident—was certainly sufficient to bring the present accident within th e coverage of the automobile policy. Neither party questions this conclusion." (10 Cal.3d at pp. 100-101, fns. omitted, original italics.)

In a footnote, the court in *Partridge* adverted to language in some cases to the effect that the use of the automobile need not amount to a "proximate cause" in the legal sense and all that is required is some "minimal causal connection" between the vehicle and the accident; however, the court in *Partridge* concluded that "The cases have not further refined the minimum requisite 'causal connection' threshold . . . but under the established authorities the automobile policy clearly covered the accident in the instant case." (10 Cal.3d at pp. 100-101, fn. 7.)

Attempts to further refine "the minimum requisite 'causal connection' threshold" were undertaken by the courts in *Farmers Ins. Exchange* v. *Reed* (1988) 200 Cal.App.3d 1230 [248 Cal.Rptr. 11] and *Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935 [172 Cal.Rptr. 385].

In *Reed*, Mrs. Reed, who was an episodic alcoholic without a driver's license, drove her vehicle to a restaurant and bar; when her husband found his wife there, intoxicated and upset, he took the car keys from her and left; Mrs. Reed was walking home when she was struck by a car or cars driven by others. Mrs. Reed sued her husband, claiming that he negligently failed to provide transportation home from the restaurant and such negligence was a concurrent cause of her injuries. The Reeds' liability insurer sought declaratory relief on the issue of coverage for Mrs. Reed's injuries; the trial court concluded that her injuries did not arise out of her husband's ownership, maintenance or use of his automobile. (200 Cal.App.3d at p. 1232.)

In upholding the ruling of the trial court, the court in *Reed* stated: "[A]lthough the word 'use' must be understood in its most comprehensive sense, there must be a causal connection between the use and the injury beyond a 'but for' link. 'The automobile is so much a part of American life that there are few activities in which the "use of an automobile" does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract. [Citation.]' [Citation.] The use of the vehicle must be a ' "predominating cause" ' or a ' "substantial factor" ' in causing the injury. [Citation.] Where the injuries are caused by an act independent of and remote from the insured vehicle's use, the requisite causal connection between the use and the injury is not established. [Citations.]" (200 Cal.App.3d at p. 1233.)

The court in *Reed* concluded: "It can be argued that Mr. Reed's failure to arrange transportation for his wife was negligence, but that negligence did

not involve his use of the insured vehicle. 'While [Mr. Reed] may have joint responsibility for the injuries . . . under general negligence principles based on the stated facts, his automobile insurer does not.' " (200 Cal.App.3d at p. 1234.)

The court in *Reed* relied substantially upon *Interinsurance Exchange* v. *Macias, supra,* 116 Cal.App.3d 935. In *Macias,* an insured father drove his drunk adult son to the son's car; the son, who was uninsured, drove his car and struck Macias. Macias claimed that the father's use of his auto to transport a known intoxicated person to another car for the purpose of allowing that person to drive establishes a causal connection to allow recovery for injuries under the transporting car's policy. The court concluded that while the father may have joint responsibility for the injuries under general negligence principles, his automobile insurer did not, as the " 'use' of the vehicle for transportation is not causally related to the injury." (116 Cal.App.3d at p. 937.)

The court in *Macias* fashioned the rule that "when [the son] left [the father's] vehicle, got into his own and then committed some negligent act of driving causing Macias' injuries, his independent acts broke the 'causal' link between the 'use' of the insured vehicle and Macias' injuries. In this holding we also find support from other jurisdictions where the mere transportation of a tortfeasor to a site where he commits a tort after departing from the uninsured vehicle was held not to establish the requisite causal relationship. [Citations.]" (116 Cal.App.3d at p. 938, fn. omitted.)[1]

We find the reasoning and test set out in *Macias* and *Reed* to be persuasive and applicable to similar policy language at issue in the instant case.

[1]Although the court in *United Services Automobile Assn.* v. *Ledger* (1987) 189 Cal.App.3d 779 [234 Cal.Rptr. 570] did not cite *Macias,* that court, purporting to apply a "minimum causal connection" test (189 Cal.App.3d at p. 783), found no coverage under an automobile liability policy where the insured stabbed another motorist. In *Ledger,* the insured suddenly changed lanes, causing another motorist to take evasive action to avoid a collision; the other motorist followed the insured for about five miles and blocked his movement; after a brief period of yelling, the other motorist challenged the insured to a fight; both men got out of their vehicles and scuffled; the motorist collapsed and died of a stab wound to the heart. The court held that because the vehicle served only to transport the insured to the scene where the stabbing took place, "there was an insufficient causal connection between the stabbing and the vehicle to consider that the former 'arose out of the use' of the latter." (189 Cal.App.3d at pp. 784-785.)

Although we believe that the court in *Ledger* misinterprets the *Partridge* case as fashioning a test which requires only a "minimum causal connection" between the injury and the "use" of the automobile, we agree with the result in *Ledger.* Applying the "predominating cause" or "substantial factor" test of *Macias* and *Reed* to the facts in *Ledger,* it is clear that there would be no coverage. Accordingly, although we disagree with the statement of the test in *Ledger,* the result therein is consistent with *Macias* and *Reed.*

Under the principles set out in *Macias* and *Reed*, we conclude that the negligent act of Deguevara in leaving Mr. Rowe in a semiconscious state in his car with the windows closed is an act independent of and remote from the use of the uninsured vehicle. That negligent act did not involve a "use" of the uninsured vehicle. As noted in *Macias*, "the mere transportation of a tortfeasor to a site where he commits a tort after departing from the uninsured vehicle" does not establish the requisite causal relationship. (116 Cal.App.3d at p. 938.)

Appellant argues that the injury arose out of the use of the uninsured motor vehicle because "it was necessary for the undertaking by Hite and Deguevara [to take decedent home] that Deguevara follow Hite and decedent in her own vehicle in order to give Hite a ride from decedent's residence." All that appellant is saying is that Deguevara's automobile played a part somewhere in the chain of events. As pointed out in *Reed*, the automobile is such a ubiquitous part of our lives that merely playing a part in the chain of events leading up to the injury is insufficient to establish a "use" of a vehicle within the provisions of an automobile liability policy; rather, the use of the automobile must be a substantial factor or predominating cause of the injury.

As the instant complaint does not allege facts sufficient to establish that Mr. Rowe's death arose out of the "use" of Deguevara's uninsured automobile, the trial court properly granted judgment on the pleadings.

## DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.