[No. B119313. Second Dist., Div. Two. Oct. 6, 1998.]

LAURENCE W. PETERS, Plaintiff and Appellant, v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY,
Defendant and Respondent.

COUNSEL

Michael J. T. O'Brien for Plaintiff and Appellant.

Porter, Groff & Lodwick and David S. Porter for Defendant and Respondent.

OPINION

**BOREN, P. J.**—This is an insurance coverage dispute. A boat owner is arguing that his yacht was "used"—within the meaning of his boat insurance policy—to transmit the herpes virus from his mouth to his girlfriend's genitals. He reasons that his large pleasure craft was "a sign of his wealth and status" which "fostered romance and sexual conduct" leading ineluctably to a specific type of sexual activity—oral copulation—which transmitted the pernicious virus. The insured's argument foundered in the trial court, which gave judgment to the insurance company. We affirm.

### FACTS

In July of 1995, Susan L. instituted a lawsuit against appellant Laurence W. Peters for negligence, battery, intentional transmission of an incurable sexual disease, and fraud. Susan L. alleged that she and appellant began dating in August of 1994. A sexual relationship developed which continued throughout September, October, November and December of 1994. In December of 1994, Susan L. developed painful vaginal lesions which were diagnosed as being caused by the herpes I and II viruses. Susan L. allegedly confronted appellant, who admitted that she was not the first woman who had accused him of transmitting the herpes virus to her; that he knew he had herpes; and that he used "home remedies" to combat the virus. He also admitted to Susan L. that during their sexual relationship, he was simultaneously conducting a sexual relationship with another woman who had active herpes I and II viruses and that he previously had a sexual relationship with yet another woman who had the disease. Appellant allegedly expressed remorse for transmitting the herpes virus to Susan L.

Susan L.'s complaint, on its face, mentions nothing about a boat or watercraft. Nevertheless, appellant tendered the defense of Susan L.'s lawsuit to respondent Firemen's Insurance Company of Newark, New Jersey, through which appellant maintains a liability insurance policy on his 42-foot yacht harbored in Long Beach. Respondent denied appellant's request for coverage and declined to defend him against Susan L.'s lawsuit. Appellant eventually settled with Susan L. for $120,000 and paid his own lawyer some $20,000 in attorney fees.

In April of 1997, appellant filed a lawsuit against respondent for breach of contract and bad faith. He alleges that the yacht policy respondent issued to him required the insurer to defend and indemnify him against Susan L.'s lawsuit. Specifically, he points to policy language under "boating liability" coverage which states that respondent will pay damages "for any claim or suit covered under this policy for bodily injury or property damage for which any insured person becomes legally liable through the ownership, maintenance or use of the insured boat. We will settle or defend, as we consider appropriate, any claim or suit which asks for these damages. We will also pay for an attorney we select to defend you." The policy expressly excludes from coverage any bodily injury "caused by or resulting from an intentional act of any insured . . . ."

Respondent pursued a motion for summary judgment. The trial court found that the yacht policy does not, as a matter of law, provide coverage for any of the acts alleged by Susan L. in her complaint. The court also found that there was not, as a matter of law, any potential for coverage for the acts alleged by Susan L. Finally, the court concluded that respondent had no duty to indemnify or defend appellant against Susan L.'s claims, and that there are no triable issues of material fact. Judgment was entered in favor of respondent on January 7, 1998. This appeal was taken on January 27, 1998.

## DISCUSSION

The issue of whether there is a potential for coverage under an insurance policy and a duty to defend is a question of law. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. . . . However, ' "where there is no possibility of coverage, there is no duty to defend . . . ." ' " (*Id.* at p. 19.) It is clear "that the determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Ibid.*)

Here, Susan L.'s third party complaint alleges absolutely no facts giving rise to a potential for coverage. There is no mention of the yacht insured by respondent nor an allegation that Susan L. contracted the herpes virus while on a boat with appellant. Thus, by comparing the allegations of the complaint with the terms of appellant's yacht policy, there is no basis for claiming insurance coverage.

It is only through extrinsic evidence that the tenuous link between Susan L.'s herpes virus and appellant's boat becomes apparent. Appellant and Susan L. began their sexual relationship in September, but it was a fateful romantic boat voyage at Thanksgiving, appellant insists, that caused damage to Susan because it was only the purported setting—on appellant's prestigious watercraft—which led to the "sex-filled sailing adventure" and oral copulation which resulted in the (speculative) transmission of the herpes virus.[1]

As appellant observes, policy language providing coverage for bodily injury arising out of the "use" of an insured vehicle "has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].) The appellate courts have refined what constitutes a "causal relation" sufficient to bring an injury within the scope of liability coverage. For example, ". . . mere presence in an automobile at the time of a shooting accident does not establish the required causal connection between the car and the incident." (*Aetna Casualty & Surety Co.* v. *Safeco Ins. Co.* (1980) 103 Cal.App.3d 694, 699 [163 Cal.Rptr. 219]; see also *Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 148 [63 Cal.Rptr. 791] [use of vehicle to transport cardboard boxes which were piled on the ground and lit, burning nearby structures, was not covered because use of the vehicle was neither a "predominating cause" nor a "substantial factor" in the injury].) By contrast, injury to an auto passenger sustained when the car hit a bump in the road, proximately causing a hair-triggered gun to discharge accidentally, was causally connected to the use of the car. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at pp. 98-102.)

This court has had occasion to elaborate on the kind of "use" needed to establish liability coverage. In *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1038-1039, [182 Cal.Rptr. 720] Justice Compton wrote, "The distinction between *Partridge* and *Aetna, supra*, and the cases arrayed therein is that the vehicle in *Partridge* provided more than just a situs for the accident. The movement of the vehicle and its manner of operation was a contributing cause." (See also *Reliance Ins. Co.* v. *Alan* (1990) 222 Cal.App.3d 702, 708 [272 Cal.Rptr. 65], disapproved on other grounds in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 52, fn. 14 [65 Cal.Rptr.2d 366, 939 P.2d 766] ["[I]n the instant case, the insured vessel was moored at its berth at the time of the fatal shooting. Thus, the insured vessel served merely as the locale of the shooting and there was no 'causal

---

[1]Appellant concedes that "The cause in fact of Susan L.'s contraction of herpes simplex will never be known."

relationship' between the boat and the shooting which would trigger coverage under the 'Protection and Indemnity' policy."].)

The standard this court announced in *Kohl* applies with equal force to boats and is not limited solely to motor vehicles. Vehicles and boats are a means of transporting people from one location to another, either for business or pleasure. Both pose the risk of colliding with objects. Both are subject to vicissitudes along the route, whether from waves or potholes, which create a risk of sudden and unintended movement to those using these modes of transport.

Applying the *Kohl* standard to the case at bench, it is apparent that the extrinsic facts raised by appellant do not come within the "use" provision of his yacht policy. Neither the movement of appellant's yacht nor the manner of its operation had anything to do with the transmission of the herpes virus from appellant to Susan L. Appellant is not claiming that his yacht plunged into a wave trough, causing him to stumble and fall, mouth open, onto Susan L.'s vagina.[2] Rather, the yacht merely provided a situs—along with appellant's house and Susan L.'s house—wherein appellant executed his plan to engage in a variety of "very free sexual activities" with Susan L. This is not the type of boat "use" contemplated by appellant's yacht policy.[3]

The case of *Ohio Casualty Ins. Co.* v. *Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641 [196 Cal.Rptr. 164] is instructive. A boat owner motored into the middle of a lake. One of his boating companions dove off the boat into the lake and, upon surfacing from her dive, was struck and seriously injured by a passing motor boat. The appellate court concluded that the boat "did not play an active role in causing the injury. The only 'use' of the boat was to transport [the insured and his passenger] to the scene of the accident. Once there, the boat's engine was turned off and it became nothing more than a floating dock or platform." (*Id.* at p. 646.) The alleged negligence of the boat owner "was not in any way dependent on the use of the

[2]Appellant does, however, hypothesize that the disease may have been transmitted if "he helped steady [Susan L.] on the rocky boat" or if the amorous couple hit an ocean swell causing them to fall and a herpes infection on his finger caused a herpes infection on her finger which was then somehow transferred to her vagina. Apart from its absurdity, appellant's speculation is unsupported by the record. There is no proof that appellant ever steadied Susan L. on the boat, and certainly not by grabbing her crotch. Moreover, there is no proof that either appellant or Susan had open herpes lesions on their hands. Appellant is simply fabricating outlandish theories. Appellant cannot establish a potential for coverage unless there are some colorable facts supporting his theories.

[3]Incidentally, we note that the policy exclusion for intentional misconduct does not apply here. Although appellant intended to engage in sexual relations, he claims he did not intend to transmit a disease to Susan L. The exclusion would only apply if appellant intended to transmit a disease. (*State Farm Fire & Cas. Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 966, 969 [267 Cal.Rptr. 379].)

boat before liability would arise. His liability for his acts would be unaffected whether the acts occurred on a boat, a pier or on the shore. That they occurred on the boat is fortuitous." (*Ibid.*) The same reasoning applies here: Appellant and Susan L. sailed to Catalina Island, then, when the boat was moored, engaged in the sexual acts which allegedly caused injury to Susan L. The injury could just as easily have occurred in appellant's or Susan L.'s home. The presence of a boat in this instance is incidental, not essential.

Finally, appellant argues that his insurer knew it had a duty to defend because it established a reserve fund. The record shows, however, that respondent placed the grand sum of $11 in its reserve because it believed there was no potential for coverage.

## DISPOSITION

The judgment is affirmed.

Nott, J., and Zebrowski, J., concurred.