[No. B125033. Second Dist., Div. Four. Nov. 8, 1999.]

AMERICAN NATIONAL PROPERTY AND CASUALTY CO., Plaintiff and Respondent, v.
JULIE R., Defendant and Appellant.

## COUNSEL

Myers & Pollard, Michael D. Myers, Christine Pollard and Matthew L. Taylor for Defendant and Appellant.

Sylvester & Oppenheim and Richard J. Schlegel for Plaintiff and Respondent.

## OPINION

KUHL, J.*—Julie R. was raped by the uninsured driver of a car in which she was riding. She filed a claim against her uninsured motorist insurance policy, contending that her injuries from the assault arose out of the use of her assailant's vehicle. The insurance company filed a declaratory relief action, seeking a declaration that the policy did not cover Julie R.'s injuries. We agree with the trial court that the policy does not provide coverage because there is an insufficient causal link between Julie R.'s injuries from the assault and the assailant's use of his vehicle.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 1995, Julie R. accompanied an acquaintance, Hooman Sebastian Aazami (Aazami), to the beach in Malibu. After about two hours they went to dinner at a restaurant in Hollywood. They departed the restaurant in Aazami's BMW, which he was driving. Aazami stopped the car along the side of the Interstate 5 freeway near the Los Angeles River. Aazami parked the car against a chain link fence so that the passenger side door of the car could not be opened. Aazami got out of the car, stating that he needed to relieve himself.

When he returned to the car he began to make unwanted sexual advances toward Julie R. Julie R. resisted. She tried to open the door of the car, but it was locked. She tried to roll down the windows, but they were power windows and she could not find the control panel. She tried to kick the windshield, but she was not able to because the seat was pushed all the way back. Julie R. was secured in her seat by a seat belt. During the attack Aazami made the passenger seat recline. Aazami moved to the passenger side of the car and raped Julie R. After the attack, Aazami drove Julie R. home.

Julie R. made a claim for benefits under the uninsured motorist coverage of an automobile insurance policy issued by American National Property and Casualty Co. (ANPAC) to Julie R.'s father. ANPAC filed a declaratory relief action, seeking a declaration that the uninsured motorist provisions of the policy did not cover the injuries Julie R. sustained in the attack by Aazami. It is conceded that Aazami was an uninsured motorist. The policy language in dispute provides: "We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured or an underinsured motor vehicle. The bodily injury must be caused by accident and result from the ownership, maintenance, or use of the vehicle."

At a court trial, Julie R. testified about the circumstances of the attack, and the insurance policy was admitted into evidence. The court held that when injuries are "caused by an act independent of and remote from the insured vehicle use, the requisite causal connection between the use and the injury is not established." The court found that Aazami and his assault "are the actions that are the substantial factors and predominating cause of the injuries at issue." Therefore the trial court found that the insurance policy "does not cover the incident at issue."

## DISCUSSION

As the trial court noted in its decision, "[t]he facts involved in this matter are not in dispute." Therefore "we begin from the established rule that

since the underlying facts are not in dispute ' "it is the duty of the appellate court . . . to make its own independent determination of the meaning of the language used in the instrument[ ] under consideration." ' " (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123] (*Partridge*); see also *Interinsurance Exchange* v. *Flores* (1996) 45 Cal.App.4th 661, 668 [53 Cal.Rptr.2d 18].)

 The issue of construction here is the meaning of the phrase "[t]he bodily injury must . . . result from the . . . use of the vehicle." Insurance companies are required by Insurance Code section 11580.2 to include uninsured motorist coverage in all automobile insurance policies absent a statutorily specified waiver. So long as an uninsured motorist policy grants benefits that are equal to or greater than the statutorily required benefits, " '[t]he rights of the parties are to be determined by the terms of their policy . . . .' " (*Utah Property & Casualty Ins. etc. Assn.* v. *United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010, 1015 [281 Cal.Rptr. 917], citation omitted.)[1]

Numerous California cases discuss the meaning of the phrase "arising out of the use" of a vehicle in the context of interpreting the coverage clause of an automobile insurance policy. Both sides rely on these authorities in their briefs and no party argues that the phrase "result from" should be interpreted any differently from the phrase "arising out of."

In the leading case interpreting the "arising out of" language of an automobile insurance policy, the California Supreme Court observed that "California cases uniformly hold that the 'use' of an automobile need not amount to a 'proximate cause' of the accident for coverage to follow. [Citations.] Some minimal causal connection between the vehicle and an accident is, however, required. 'Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use.' [Citation.]" (*Partridge, supra,* 10 Cal.3d at p. 100, fn. 7.)

---

[1]We do not address in this case whether Insurance Code section 11580.2 requires an uninsured motorist policy to include coverage for intentional acts. ANPAC did not contend at trial or before this court that coverage should be denied on the ground that Julie R.'s injuries were not "caused by accident." Indeed ANPAC paid for some of Julie R.'s medical expenses under another policy provision that also covered injuries "caused by accident." ANPAC apparently has conceded that the "caused by accident" language of its policy does not preclude payment for injuries caused by intentional acts (i.e., the rape by Aazami). Although we requested postargument briefs on the subject of whether Insurance Code section 11580.2 requires insurers to provide uninsured motorist coverage for intentional acts, we do not reach this issue because (1) it was not raised below, and (2) even if we were to hold that Insurance Code section 11580.2 does not require coverage for intentional acts, ANPAC arguably has conceded that Julie R.'s injuries were "caused by accident" within the meaning of its policy.

Applying these principles, subsequent cases have found coverage where a vehicle is being used in a manner that reasonably could be contemplated by the insurer and injury occurs in the course of such use. (*See United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765, 770-771 [111 Cal.Rptr. 595].) For example, coverage has been found where the injury arises in the course of unloading or exiting from a vehicle (see, e.g., *Cabral* v. *Los Angeles County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907 [78 Cal.Rptr.2d 385] [driver of vehicle injured exiting into path of bus]; *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98] [child injured exiting vehicle into traffic]), and where a vehicle is being driven in such a way as to cause an item being transported in the vehicle to cause injury. (See, e.g., *Partridge, supra,* 10 Cal.3d at pp. 99, 101 [driver was negligent in driving off the paved road and a gun in the car discharged; the driver's negligence was "a substantial, and indeed, a proximate cause of the accident"].)

However, where the role of the vehicle in the injury is merely as a situs for the act causing injury, courts have found that the injury does not arise from the use of the vehicle and that the injury is not covered. For example, coverage was denied for an injury caused when a gun inside a car at rest discharged because the bolt of the gun was pulled back. (*Aetna Casualty & Surety Co.* v. *Safeco Ins. Co.* (1980) 103 Cal.App.3d 694 [163 Cal.Rptr. 219] (*Aetna*).) Coverage also was denied for injury caused by the transmission of herpes during consensual sex on an insured boat on the ground that the use of the boat was merely incidental to the sexual activity. (*Peters* v. *Firemen's Ins. Co.* (1998) 67 Cal.App.4th 808 [79 Cal.Rptr.2d 326].)

 In this case, the vehicle was at rest and served as the situs of the assault causing injury to Julie R. Julie R. argues, however, that the assailant "used" certain physical aspects of the vehicle to trap her and to consummate the assault.

Mere use of a vehicle in some way connected to the events giving rise to the injury is insufficient to establish coverage. If use alone established coverage, then coverage should have been found in cases where the vehicle merely was the situs of the injury. There must be a causal connection between the use of the vehicle and the injury.

The exact nature of the required causal connection expressly was left open in *Partridge, supra,* 10 Cal.3d 94. In *Partridge,* the California Supreme Court contrasted the decisions of *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 151 [57 Cal.Rptr. 240] and *Truck Ins.*

*Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 148 [63 Cal.Rptr. 791]. (*Partridge, supra,* 10 Cal.3d at pp. 100-101, fn. 7.) The *Universal Underwriters* decision interpreted "arising out of" to "include *any cause in fact* rather than only legal or proximate cause." (*Universal Underwriters Ins. Co.* v. *Aetna Ins. Co., supra,* 249 Cal.App.2d at p. 151, italics added.) *Truck Ins. Exch.,* by contrast, required that use of the vehicle be a " 'predominating cause' or a 'substantial factor' in causing the injury." (*Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d at p. 148.)

Subsequent to *Partridge,* the predominating cause/substantial factor test was expressly adopted in *Rowe* v. *Farmers Ins. Exchange* (1992) 7 Cal.App.4th 964, 970-972 [9 Cal.Rptr.2d 314]), and in *Farmers Ins. Exchange* v. *Reed* (1988) 200 Cal.App.3d 1230, 1233 [248 Cal.Rptr. 11]. *Aetna* also relies on the analysis of *Truck Ins. Exch.* v. *Webb.* (*Aetna, supra,* 103 Cal.App.3d at p. 698.) We adopt the predominating cause/substantial factor test as well. If "any cause in fact" connection between injury and use of a vehicle were sufficient, then the mere fact that a vehicle is the situs of acts causing injury, or that a vehicle is used for transportation to the scene of a crime, would establish coverage. Prior cases do not support this approach. As the court stated in *Truck Ins. Exch.* v. *Webb*: "The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract." (*Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d at p. 145.)

Applying the predominating cause/substantial factor test to the facts of this case, we find that the "use" of Aazami's BMW in the rape of Julie R. was incidental to, and not a substantial factor in, the infliction of injury on Julie R. In this case, the vehicle was "used" in three ways. It was transportation to and from the scene of the assault. It was parked along a chain link fence, restricting egress from the passenger side of the car. And it served as a confining locale for the rape. None of these "uses" of the vehicle was a substantial factor in the injury to Julie R.

Use of a vehicle as transportation to the scene of an injury does not establish a sufficient causal connection between the "use" and the injury. " '[T]he mere transportation of a tortfeasor to a site where he commits a tort after departing from the uninsured vehicle' does not establish the requisite causal relationship." (*Rowe* v. *Farmers Ins. Exchange. supra,* 7 Cal.App.4th 964, 972, quoting *Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385].)

For example, in *Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d 140, the vehicle was used to transport cardboard boxes to a location where the boxes were ignited and caused buildings to burn. This use of the vehicle was insufficient to qualify as a substantial factor in causing the injury. The court stated that ". . . although the use of the pick-up truck did play a part in the chain of events, it cannot be reasonably said that the destruction of the buildings arose out of the 'use' of the vehicle." (*Id.* at p. 148.) This reasoning also was applied in *Aetna, supra,* 103 Cal.App.3d 694, which involved the discharge of a gun inside a parked car: "The argument . . . that but for the vehicle, the boys would not have been at the site of the accident, is simply specious. Carried to its logical conclusion, it would attach automobile insurance coverage to every accident which occurred after an insured had first been transported by automobile." (*Id.* at p. 700.) Aazami's use of the vehicle for transportation to and away from the site of the rape was not a substantial factor in the assault on Julie R.

Nor does the fact that Aazami parked his car next to a fence so that the passenger side door could not open establish a use of the car that is a substantial factor in Julie R.'s injury. In *Aetna, supra,* 103 Cal.App.3d 694, one of the occupants of the parked car pulled back the bolt of a rifle to chamber a round of ammunition, and the gun discharged, causing injury. (*Id.* at pp. 696-697.) The court held that the injury arose out of the conduct of the person who pulled back the bolt of the rifle when it was pointed at another, not out of the use of the car. (*Id.* at p. 698.) Even though " 'the placing of the loaded gun in a hazardous position in the vehicle increased the danger of its firing and harming an occupant,' " the court concluded that use of the vehicle was not a substantial factor in the injury. (*Id.* at p. 700, quoting *Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390, 398 [122 Cal.Rptr. 696].) The *Aetna* court concluded that " 'it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm.' " (103 Cal.App.3d at p. 701.)

Certainly, Aazami's placement of his vehicle against the fence increased the danger that he would be successful in carrying out his intent to rape Julie R. But the rape "originated from, grew out of [and] flowed from" Aazami's intent to rape Julie R. and his actions with his body to achieve that end. (*Aetna, supra,* 103 Cal.App.3d at p. 701.) The manner of operating the vehicle did not contribute directly to Julie R.'s injury. If Aazami had driven to a remote location or to a place where he had prepared equipment to restrain Julie R., use of the car would have contributed to the potential that Aazami would be successful in his attack. But the case law cited above

concerning use of a vehicle to transport a tortfeasor to the site of the tort establishes that in those circumstances use of the car could not be considered the predominant cause or a substantial factor in a resulting rape. In this case the vehicle provided a favorable situs for the attack, but its use was a circumstance accompanying the rape, not a predominant cause or substantial factor in Julie R.'s injury.

For the same reasons, use of the interior of the vehicle as a confining circumstance during the rape does not rise to the level of a substantial factor in the injury. In any rape, the perpetrator will use whatever is available at the site of the attack to attempt to confine or subdue his victim. But the role of the automobile in the rape of Julie R. was merely as a locale for the attack. Although the door was locked and the passenger seat reclined, nothing about the operation of the vehicle contributed to the attack any more than furniture or a corner used to trap a rape victim in a house could be said to be a substantial factor in causing a rape. "The distinction between *Partridge* and *Aetna, supra,* and the cases arrayed therein is that the vehicle in *Partridge* provided more than just a situs for the accident. The movement of the vehicle and its manner of operation was a contributing cause." (*State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1038-1039 [182 Cal.Rptr. 720].) Although here Aazami used physical aspects of the vehicle to assist in confining the victim, neither the movement of the car nor its operation contributed to the attack. The use of the passive "furniture" of the car during the rape was incidental to the attack, not a substantial causal factor.

In *Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570 [90 Cal.Rptr. 654], the court held that an automobile insurance policy did not provide coverage even though physical aspects of the car were used in perpetrating an attack. In that case one Stevens, an uninsured motorist, stopped his vehicle and alighted from it to start an altercation with Hansel. Stevens broke a bottle on the bumper of his car and acted as if he were getting into the car. Stevens then stabbed Hansel with the bottle "from a point behind the door [of the car] while Stevens held the door in his grasp." (*Id.* at p. 572.) Hansel's insurance company sought a declaration that the uninsured motorist provisions of Hansel's policy did not provide coverage for his injuries.

The *Hansel* court acknowledged that the facts of that case could be characterized as involving "use of an automobile as an instrument to create a weapon in the form of a broken bottle and as a shield for an assault with that weapon . . . ." (12 Cal.App.3d at p. 574.) Nevertheless the court rejected the contention that Hansel's injuries arose out of the use of the

uninsured vehicle. Noting that "[v]ehicle liability policies must be interpreted with regard to 'the intent and reasonable expectation of the parties' . . ." (*ibid.*, citations omitted), the court held that Hansel's injury from Stevens's attack was "not the form of loss for which the automobile liability policy may reasonably be expected to provide indemnity." (*Ibid.*)

In this case, as in *Hansel*, the use of the vehicle is not "a contemplated 'use' even though the car passively was involved in the chain of events leading to the victim's injuries." (*Interinsurance Exchange* v. *Macias, supra,* 116 Cal.App.3d at p. 938, citing *Farmer's Ins. Exchange* v. *Hansel, supra,* 12 Cal.App.3d 570.) ■ We recognize that coverage clauses of insurance policies are to be "interpreted broadly so as to afford the greatest possible protection to the insured . . . ." (*Partridge, supra,* 10 Cal.3d at p. 101.) However, "[t]he scope of coverage of a vehicle liability policy is to be construed with regard to the intent and reasonable expectations of the insured." (*Interinsurance Exchange* v. *Macias, supra,* 116 Cal.App.3d at p. 938.) Uninsured motorist coverage " 'is not intended to—and does not—act as a substitute for general (and not merely automotive) liability coverage of persons . . . who, by chance, happen also to be uninsured motorists.' " (*Rowe* v. *Farmers Ins. Exchange, supra,* 7 Cal.App.4th at p. 967, quoting *State Farm Mut. Auto. Ins. Co.* v. *Spann* (1973) 31 Cal.App.3d 97, 100 [106 Cal.Rptr. 923].) ■ We conclude that an insured would not reasonably expect that coverage for injuries that "result from the . . . use of [an uninsured] vehicle" would encompass injuries from a rape in which the victim is confined within an uninsured vehicle.

The cases cited by Julie R. do not require a contrary result. Julie R. relies on *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565 [140 Cal.Rptr. 828], in which the court found coverage for injuries caused to the eye of a pedestrian by an egg thrown from a vehicle moving at 40 miles per hour. (*Id.* at p. 569.) The court reviewed cases determining whether automobile insurance provided coverage for objects thrown from vehicles. "Such a throwing, the cases appear to hold, is not *necessarily* the use of an automobile; it may or may not be, according to circumstances. Where there is found a sufficient causal relationship between the throwing and consequent injury, and the ordinary use for which the vehicle was intended, such a liability will attach. But where *no* sufficient causal relationship appears there will be no liability." (*Id.* at p. 572.) The court found that the injury from the egg was sufficiently causally related to use of the car because "the principal cause of [the victim's] grievous injury, in addition to such forward motion as was caused by the 'flipping' of the egg, was the approximately 40-mile-per-hour speed initially imparted to it

by the automobile's forward motion." (*Id.* at p. 571.) Thus, the use of the car to drive at 40 miles per hour was a substantial factor in the degree of injury to the victim. In this case, by contrast, nothing about the operation of Aazami's car contributed directly to Julie R.'s injuries.

Julie R. also relies on *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26 [108 Cal.Rptr. 737] (*Hartford*). In *Hartford*, a scottie dog that had been riding in the backseat of a car bit a person seated in the front passenger seat, as the dog climbed over the front seat in an attempt to get out of the car. (*Id.* at p. 29.) The passenger claimed that the she developed cancer at the site of the dog bite and sued the owners of the car. (*Id.* at p. 30, fn. 5.) The issue on appeal was whether the car owners' automobile insurer had a duty to defend the action. The automobile insurance policy covered injuries " 'arising out of the ownership, maintenance or use of the automobile.' " (*Id.* at p. 30, italics omitted.)

In holding that the injuries from the dog bite potentially were covered, the *Hartford* court relied on precedents involving coverage for injuries during the loading and unloading of vehicles. (33 Cal.App.3d at p. 32, citing *International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1029, fn. 1 [89 Cal.Rptr. 615, 474 P.2d 431], and *Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d 140, 144.) The court characterized the dog bite injury as having "occurred during the 'unloading' of the scottie from the [insureds'] car." (*Id.* at p. 33.) *Hartford* is distinguishable from this case because Julie R.'s injuries had nothing to do with loading or unloading of Aazami's vehicle.

Moreover, *Hartford* did not apply the predominant cause/substantial factor test. The court relied on precedents interpreting "arising out of" variously as " 'import[ing] some kind of sequential relationship between the vehicle and the accident' " (33 Cal.App.3d at pp. 31-32, quoting *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 704 [76 Cal.Rptr. 281]), " 'equated with origination, growth or flow from the event' " (33 Cal.App.3d at p. 32), and " 'incident to, or having connection with' the use of the car" (*ibid.,* quoting *National Indemnity Co.* v. *Corbo* (Fla.Dist.Ct.App. 1971) 248 So.2d 238, 240). *Hartford* is not persuasive authority because its causal analysis approximates the "any cause in fact" test that we have rejected in favor of the substantial factor test.

Finally, Julie R. relies on *Interinsurance Exchange* v. *Flores, supra,* 45 Cal.App.4th 661 (*Flores*), in which the court considered whether automobile insurance covered injuries to a pedestrian caused in a drive-by shooting from

the insured's van. It was stipulated that the insured driver knew that one of his passengers was likely to shoot someone from the van. (*Id.* at p. 669.) The court found that there was no coverage on the ground that the insured's conduct was not "accidental" within the meaning of the policy. (*Id.* at p. 671.) However, in one paragraph that was not necessary to its decision, the *Flores* court stated that the pedestrian's injury did arise from the use of the insured vehicle. In its brief analysis, *Flores*, like *Hartford*, appears to apply an "any cause in fact" analysis rather than the predominant cause/substantial factor test. Thus the dicta in *Flores* does not persuade us that a different result is required here.[2]

Because, on the facts presented here, the use of the uninsured vehicle was not a predominating cause or substantial factor in Julie R.'s injury, we affirm the trial court's finding that the automobile policy at issue does not cover Julie R.'s injury from the rape by Aazami.

### DISPOSITION

The judgment is affirmed. ANPAC is to recover its costs on appeal.

Curry, J., concurred.

**EPSTEIN, Acting P. J.,** Dissenting.—A man so operates and positions his car as to imprison his passenger, whom he then rapes. The more detailed pertinent facts are these: the man drove the young woman, soon to be his victim, to Malibu, then to Hollywood where they had dinner. He then drove the car, with the lady as a passenger, onto a freeway and pulled over in such a way that the passenger door was pressed against a chain link fence. The passenger door also was locked. When the man made sexual advances toward the woman, she tried to get out of the car. She could not, because the passenger car door was locked with the window up, and she could not find the control panel to lower it. She also was too far back in the seat, which the man had reclined, to kick out the front window, although she tried to do so. The man took advantage of these circumstances to rape her.

In employing the car as a cage to imprison the woman, was the attacker using it in such a way that the victim's injuries arose out of the "use of a motor vehicle"? To ask that question is to answer it. The answer is "yes."

---

[2]Julie R. also relies on *Nationwide Mutual Ins. Co.* v. *Munoz* (Cal.App.) another drive-by shooting case, but the opinion in this case was withdrawn by order of the California Supreme Court on June 30, 1998, and Julie R.'s citation of this case violates California Rules of Court, rule 977.

The vehicle was uninsured. The woman was insured under the uninsured and underinsured motorist provision of her father's policy.[1] (Henceforth, I shall use the term "uninsured motorist" to refer to both uninsured and underinsured motorists.) That policy covered injuries resulting from use of an uninsured vehicle. The precise question before us is whether the policy, which reflects a mandatory statutory provision (Ins. Code, § 11580.2), covers the circumstances of this case. I believe that it does, and, given the posture in which the case is presented to us, the trial court erred in granting summary judgment in favor of the respondent insurer.

The posture of the case precludes our consideration of whether the uninsured motorist statute requires an "accident" to trigger coverage (it does not use that term) and whether the Legislature intended it to apply to injuries inflicted by the intentional tort of an uninsured motorist. Language in several cases views the legislative purpose as being to provide the same protection to a person who is injured by an uninsured motorist as that person would have if the tortfeasor had insurance covering the incident. (See *Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570, 572 [90 Cal.Rptr. 654]; *Rowe* v. *Farmers Ins. Exchange* (1992) 7 Cal.App.4th 964, 967 [9 Cal.Rptr.2d 314].) Sometimes this is expressed in terms of fulfilling the reasonable expectations of the insured party. (See, e.g., *United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765, 770 [111 Cal.Rptr. 595] and cases cited.) It is not likely that the parties to such a policy contemplated use of the vehicle to commit an intentional tort. Yet there are numerous cases that inform us that uninsured motorist coverage does apply to intentional torts committed by an uninsured motorist. (See, e.g., *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 571 [140 Cal.Rptr. 828] [eggs thrown at pedestrians from a moving vehicle]. Of course, in an action against a third party tortfeasor, Insurance Code section 533, which bars coverage for willful acts, may be a defense to the carrier.)

The issue is interesting, but I agree with the majority that the posture of this case prevents us from reaching it. (Maj. opn., *ante*, at p. 138, fn. 1.) We must assume, for purposes of this case, that there is no prohibition against application of the uninsured motorist statute to intentional tort situations.

The leading case in the field is *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In the more than

---

[1] I agree with the majority (maj. opn., *ante*, at p. 138.) that there is no difference between the phrase "result from" use or operation of the vehicle, used in the uninsured motorist statute, and the phrase "arising out of," which is typically used in liability cases. Consequently, liability cases construing the latter are pertinent here.

quarter century that has passed since that case was decided, our high court has not seen fit to modify or limit the language it used then. In *Partridge*, the court said that the "arising out of" formula "has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle. . . ." (*Id.* at p. 100.) In a significant footnote, the court observed that in cases involving the discharge of a firearm in a vehicle (the situation in *Partridge*), coverage had been denied where there was "*absolutely no* causal relation between the accidental firing of the gun and the use of the automobile. . . . Whenever circumstances reveal that the insured vehicle did bear some, albeit slight, causal connection with the shooting accident, courts have generally permitted recovery under automobile liability policies." (*Id.* at p. 101, fn. 8, italics in original.)

The court refined the amount of use needed to trigger coverages. It need not amount to proximate cause; "[s]ome minimal causal connection between the vehicle and an accident is, however, required. 'Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use.'" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 100, fn. 7, quoting *Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379, 385 [50 Cal.Rptr. 190, 412 P.2d 382].)

As the majority point out, some later cases have added new qualifications: that the use be a predominant or substantial factor in bringing about the injury. I see no justification for a predominance requirement, but I will accept that the use or operation of the vehicle must be a substantial (as opposed to insubstantial) factor in bringing about the injury. To borrow the majority's metaphor (maj. opn., *ante,* at p. 142), there is no coverage if the role of the vehicle is merely that of "furniture." *Farmers Ins. Exchange* v. *Hansel, supra,* 12 Cal.App.3d at page 572 provides a useful example. In that case the tortfeasor broke a bottle on a car bumper, then used the broken bottle as a weapon; he also tried to use a car door as a shield. The court held that the resulting injury did not arise out of use of the vehicle. Those facts bear no resemblance to our case. In our case, the vehicle was not used as a passive piece of furniture, but as a cage to prevent the victim from escaping, thus enabling the motorist to commit the act of rape.

The majority cite authority to the effect that the mere circumstance that a vehicle is used to transport someone to the site where an injury occurs (e.g., *Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140 [63 Cal.Rptr. 791] [vehicle used to transport boxes to a location where they were negligently

burned; no coverage]) is not enough for coverage, and I agree. But, again, that is hardly our case.

Nor is coverage prevented by the obvious fact that the rape would not have occurred if the driver had not willed it. The same thing, or something like it, is true in virtually every case in which a vehicle is used in the commission of a tort, particularly an intentional tort.

The majority say that, although the uninsured motorist used physical aspects of the car to confine the victim (maj. opn., *ante*, at p. 142), neither movement of the car nor its operation contributed to the attack. "Operation" is a concept broader than driving, and includes acts that are fairly regarded as necessary incidents to driving a vehicle. Use is an even broader concept. "It extends to any activity utilizing the vehicle." (*Cabral* v. *Los Angeles County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907, 914 [78 Cal.Rptr.2d 385].) In our case, the driver drove the vehicle to a stop so that the passenger door was pressed against a fence. That is "operation." He locked the passenger window in a closed position and reclined the passenger seat, assuring the inability of the victim to get away. That is in "use" of the vehicle.

Other cases cited in the majority's canvass, and by the parties, might also be discussed, and either applied or distinguished. No case has been cited in which a vehicle was used to transport the victim to a remote location where the vehicle itself was used as a trap to prevent her escape.

One of the cited cases, however, illustrates by contrast the distinction between "furniture" or happenstance use of a vehicle, and use of the vehicle as a significant factor in commission of a tort. The case is *Peters* v. *Firemen's Ins. Co.* (1998) 67 Cal.App.4th 808 [79 Cal.Rptr.2d 326]. (Maj. opn., *ante*, at p. 139.) That is the case where a man, operating a boat, had consensual sex with a woman passenger while the boat was sailing in the Catalina channel. The lady contracted herpes as a result of the encounter and the issue, of course, was whether her injury arose out of use or operation of the vessel. The court found no basis to conclude that the boat was a substantial factor in bringing about the woman's injury: it simply happened to be the situs of the rendezvous. But suppose the lady had been lured onto the boat and attacked at sea where she had no means of escape. Would the case have turned out differently? I think so.

In this case, the trial court found no triable issue of material fact, and granted summary judgment in favor of the insurer. My colleagues agree,

believing the car no more than "furniture." (Maj. opn., *ante*, at p. 142.) It was more than that. Its use was a substantial factor in enabling the rape of the victim. I respectfully dissent.