[No. A035595. First Dist., Div. Three. May 2, 1988.]

FARMERS INSURANCE EXCHANGE, Plaintiff and Respondent, v. LEONARD REED et al., Defendants and Appellants.

**COUNSEL**

Harry L. Ducey and Dwight B. Bishop for Defendants and Appellants.

James J. Marchiano, James C. Martin, Lucy Ablan, Joseph P. Mascovich and Crosby, Heafey, Roach & May for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—In this case we hold that injuries suffered by an intoxicated woman who was struck by a car as she walked home from a bar did not arise out of her husband's use of his insured vehicle within the meaning of his automobile liability insurance policy, even though he took the keys to that vehicle from her and left her at the bar without transportation. We

hold that the independent acts of the woman herself and the driver who struck her broke any causal connection between the husband's use of his vehicle and her injuries.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. In August 1983, appellants Leonard Reed and Beverly Reed were husband and wife and lived in Clayton. Mrs. Reed, who was an episodic alcoholic, had not had a driver's license since 1980. Upon arriving home on the day in question, Mr. Reed learned that his wife had driven one of their vehicles to a local restaurant and bar, the Pioneer Inn. He went to the restaurant and found his wife there, intoxicated and upset. Because he was angry and upset himself and did not want her to drive, he took the car keys from her and left. Later that evening, as Mrs. Reed was walking along Clayton Road, she was hit by a car driven by Charles Schultz. She may also have been struck by another unidentified vehicle.

Mrs. Reed filed a personal injury action against Charles Schultz, the Pioneer Inn, and her husband, among other defendants.[1] As against her husband, she alleged that he negligently failed to provide transportation home from the restaurant for her and that his negligence was a concurrent proximate cause of her injuries.

An automobile insurance policy issued by respondent Farmers Insurance Exchange (Farmers), an interinsurance exchange, to the Reeds was in effect on the date of Mrs. Reed's injuries. That policy provided in pertinent part that the insurer would pay damages for which any insured person was legally liable "because of bodily injury to any person . . . arising out of the ownership, maintenance or use of a private passenger car . . . ."

Farmers filed the instant action against the Reeds for declaratory relief, seeking a determination of its obligations under the policy; it later moved for summary adjudication of the issues. The trial court concluded that Mrs. Reed's injuries did not arise out of her husband's ownership, maintenance or use of his automobile, that the policy excluded liability coverage for her injuries, and that Farmers was not obligated to defend Mr. Reed in Mrs. Reed's action against him or to pay any judgment rendered against him in that action. Judgment in accordance with the order granting the motion was entered in favor of respondent and against the Reeds. Both Reeds have appealed.[2]

## DISCUSSION

Appellants contend that the trial court erred when it concluded that Mrs. Reed's injuries did not arise out of her husband's use of his automobile. The contention is not persuasive.

---

[1] Mrs. Reed has apparently settled with both Charles Schultz and the Pioneer Inn.

[2] Appellant Mr. Reed has joined in the briefs filed by appellant Mrs. Reed.

■ In determining whether an activity involving a vehicle amounts to a "use" within the meaning of an insurance policy, we must construe any uncertainties in the policy language in favor of imposing liability on the insurer. *(United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765, 769 [111 Cal.Rptr. 595].) Therefore, the term "use" is not limited to motion on the highway, but " '. . . extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured.' [Citations.]" *(Ibid.)*

Nevertheless, although the word "use" must be understood in its most comprehensive sense, there must be a causal connection between the use and the injury beyond a "but for" link. "The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract. [Citation.]" *(Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791].) The use of the vehicle must be a " 'predominating cause' " or a " 'substantial factor' " in causing the injury. *(Id.,* at p. 148.) Where the injuries are caused by an act independent of and remote from the insured vehicle's use, the requisite causal connection between the use and the injury is not established. *(Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935, 937-939 [172 Cal.Rptr. 385]; *Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d at pp. 145-146.)

In *Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d 140, a worker transported a load of cardboard boxes in an insured truck, unloaded and ignited them, and drove away. The fire spread to some nearby buildings. *(Id.,* at p. 142.) The court held that the damage to the buildings did not arise out of the use of the truck within the meaning of the policy. Although the truck's use did play a part in the chain of events which led to the fire, it could not be reasonably said that the damage arose out of the "use" of the vehicle. Instead, the conduct of the worker in setting the boxes on fire and leaving them unattended was independent of and unrelated to the use of the truck. "The use of the truck was neither a 'predominating cause' or a 'substantial factor' in causing the injury." *(Id.,* at p. 148.)

In *Interinsurance Exchange* v. *Macias, supra,* 116 Cal.App.3d 935, a father used his insured vehicle to transport his intoxicated adult son to the son's own car, even though the father was aware that his son would then drive that car. The son, whose vehicle was uninsured, struck and injured a third party. *(Id.,* at pp. 936-937.) The court held that the third party's injuries did not arise out of the use of the father's vehicle within the meaning of his automobile insurance policy. Although the father may have been liable under general negligence principles, his automobile insurer was not.

(*Id.,* at p. 937.) The court acknowledged that but for the father's negligence in transporting his son to the son's car, the accident would not have occurred. (*Ibid.*) Nevertheless, it held that when the son left the father's vehicle and negligently drove off in his own car, those independent acts broke the causal link between the use of the insured vehicle and the victim's injuries. (*Id.,* at pp. 937-938.)

█ In this case, Mr. Reed's taking of the car keys from his wife may have been one link in the unfortunate chain of events which culminated in her injury, but that fact does not establish the causal connection between the injury and his use of his vehicle required to impose liability on his insurer. Just as the independent acts of the intoxicated son in *Macias* broke the causal connection between the father's use of his vehicle and the victim's injuries, here Mrs. Reed's own independent conduct in walking home and the independent act of the driver or drivers who struck her broke any causal connection between Mr. Reed's use of his vehicle and Mrs. Reed's injuries. It can be argued that Mr. Reed's failure to arrange transportation for his wife was negligence, but that negligence did not involve his use of the insured vehicle. "While [Mr. Reed] may have joint responsibility for the injuries . . . under general negligence principles based on the stated facts, his automobile insurer does not." (*Interinsurance Exchange* v. *Macias, supra,* 116 Cal.App.3d at p. 937.)

Appellants cite no case in which liability has been imposed on an insurer in circumstances similar to those at hand. The several cases cited by appellants are all factually distinguishable. For example, in *Utah Home Fire Ins. Co.* v. *Fireman's Fund Ins. Co.* (1970) 14 Cal.App.3d 50 [91 Cal.Rptr. 781], a person was struck by a car as he stood in the street with his hands on the windowsill of a parked car, conversing with its driver. Among the questions on appeal was whether the conversation between the victim and the driver of the insured parked car constituted a use of the latter's car within the meaning of his automobile insurance policy. The court reasoned that the victim would not have been in the path of the car which hit him if the insured had not been sitting in his parked car. Since the parked car was the essential factor that placed the parties in their respective positions at the time of the accident, the victim was "using" and "upon" the insured car within the meaning of the policy. (*Id.,* at pp. 52-54.)

The only similarity between *Utah Home Fire Ins. Co.* and the instant case is that in both, the insured automobile did play at least some part in the flow of events which eventually culminated in the victim's injuries. In *Utah Home Fire Ins. Co.,* however, the insured was in his car and the victim was in physical contact with the car when he was injured. In this case, Mrs. Reed was nowhere near the insured vehicle when she was injured.

Another case cited by appellants is *National Indem. Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], involving a child who was a passenger in the insured vehicle. When the car pulled over to the curb and stopped, the child unexpectedly got out, started to run across the street to his home, and was struck by another vehicle. The trial court held that the injury arose out of the use of the insured vehicle, and the reviewing court agreed. It reasoned that a driver has a particular duty to supervise the manner of discharging small children from a vehicle; it also concluded that "[t]he process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle." (*Id.*, at pp. 105-106.) There is no factual similarity between the instant case and *National Indemnity Co.*

The other cases cited by appellants are also inapposite, as all involve an injury or damage directly connected with the physical use of the insured vehicle. (See, e.g., *Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149 [182 Cal.Rptr. 256] [fire occurs during fueling of aircraft]; *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565 [140 Cal.Rptr. 828] [boys riding in car throw eggs at pedestrian]; *United Services Automobile Assn.* v. *United States Fire Ins. Co.*, *supra*, 36 Cal.App.3d 765 [victim burned when gasoline ignites during insured's attempt to start the car by pouring gasoline into carburetor]; *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26 [108 Cal.Rptr. 737] [dog and human passenger both trying to exit the vehicle; dog bites human]; *Smith* v. *Travelers Indemnity Co.* (1973) 32 Cal.App.3d 1010 [108 Cal.Rptr. 643] [accident arose out of the use of a trailer being towed by a pickup truck]; *Cocking* v. *State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965 [86 Cal.Rptr. 193] [victim struck by car as he stood behind parked car, preparing to put on tire chains].)

The trial court did not err in concluding that Mrs. Reed's injuries did not arise out of Mr. Reed's use of their insured vehicle. In light of our conclusion, we need not consider respondent's alternative argument that Mrs. Reed's injuries were not covered because she was an insured person under the policy.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.