18 Cal.Rptr.3d 809 (2004)
122 Cal.App.4th 563
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent,
v.
Robert A. GRISHAM, Defendant and Appellant.
No. C045912.
Court of Appeal, Third District.
September 20, 2004.
*810 Johanson, Koons & Constantino and Alexander L. Constantino, Auburn, for Defendant and Appellant.
McDowall, Cotter, Vale, Bracco & Kelly and William D. McDowall for Plaintiff and Respondent.
DAVIS, Acting P.J.
"The cat will mew, and dog will have his day." (Shakespeare, Hamlet, act 5, scene 1.) Here, Dwayne Vandagriff's dog elected to have his day by biting Robert A. Grisham's leg after escaping from Vandagriff's parked pickup truck. In this resulting insurance coverage action, plaintiff State Farm Mutual Automobile Insurance Company (State Farm) obtained a judgment declaring that it had no duty to defend or indemnify Vandagriff, its insured, for injuries sustained by Grisham.
In this appeal by Grisham, we resolve the issue of whether Vandagriff's auto liability insurance policy covers Grisham's injury because that injury allegedly was "caused by accident resulting from the ... use of" Vandagriff's truck. We conclude there is no coverage and affirm the judgment.

BACKGROUND
This matter was tried to the court on an agreed statement of facts.
On May 14, 2001, Vandagriff drove his pickup truck to Old Town Auburn to visit a friend briefly. He had his two dogs with him in the bed of the truck, which was covered by a camper shell. Vandagriff left the slider windows on both sides of the camper shell slightly ajar; the slider windows did not have locking mechanisms. He placed a water dish for the dogs on the floor of the pickup cab. The dogs were not tethered inside the shell.
Unbeknownst to Vandagriff, the dogs, on several occasions, got out of the pickup through the left window of the camper shell. A third party who worked in the area coaxed them back into the truck, through the tailgate.
Grisham was walking to his vehicle after the dogs had been placed back into the pickup. When Grisham was about 20 to 25 yards from the pickup, he saw both dogs jump from the left window of the camper shell and run directly toward him. One of the dogs then bit him on the leg.
The estimated time between when Vandagriff arrived with the dogs and when the biting occurred varied from 30 minutes to two hours.

DISCUSSION
The issue in this appeal involves whether Vandagriff's auto liability insurance policy with State Farm covers Grisham's injury. The material facts are undisputed. The issue presents a question of law for our independent determination. (Bareno v. Employers Life Ins. Co. (1972) 7 Cal.3d 875, 881, 103 Cal.Rptr. 865, 500 P.2d 889; Estate of Coate (1979) 98 Cal.App.3d 982, 986, 159 Cal.Rptr. 794.)
The pertinent coverage provision is a relatively common one. Under that provision, State Farm is obligated to pay bodily injury damages that Vandagriff becomes legally liable to pay if the injury is "caused by accident resulting from the ownership, maintenance or use" of Vandagriff's insured *811 pickup truck. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003) ¶ 7:1225, p. 7D-21 (hereafter, Croskey, Insurance Litigation).) The issue on appeal centers on whether Grisham's injury resulted from the "use" of Vandagriff's truck.
The seminal decision interpreting the term "use" in this context is State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (Partridge). Partridge interpreted the similar phrase "arising out of the ... use ... of" the insured vehicle. (Id. at p. 98, 109 Cal.Rptr. 811, 514 P.2d 123; see American Nat. Property & Casualty Co. v. Julie R. (1999) 76 Cal.App.4th 134, 138, 90 Cal.Rptr.2d 119 (Julie R.); see also Ins. Code, § 11580.1, subd. (a).) Partridge stated that "[s]ome minimal causal connection" between the "use" of the vehicle and the accident is "required." (Partridge, supra, 10 Cal.3d at p. 100, fn. 7, 109 Cal. Rptr. 811, 514 P.2d 123.) Partridge expressly left open the precise nature of this required causal connection. (Id. at pp. 100-101, fn. 7.) Partridge, however, noted a contrast between two decisions on this point: one required that "use" of the vehicle be a "`predominating cause'" or a "`substantial factor'" in causing the injury (Truck Ins. Exch. v. Webb (1967) 256 Cal. App.2d 140, 148, 63 Cal.Rptr. 791 (Webb)); the other stated, more broadly, that "any cause in fact" would suffice (Universal Underwriters Ins. Co. v. Aetna Ins. Co. (1967) 249 Cal.App.2d 144, 151, 57 Cal.Rptr. 240). (Partridge, supra, 10 Cal.3d at pp. 100-101, fn. 7, 109 Cal.Rptr. 811, 514 P.2d 123; Julie R., supra, 76 Cal.App.4th at pp. 139-140, 90 Cal.Rptr.2d 119.)
Subsequent decisions have largely opted for the predominating cause/substantial factor test. (Julie R., supra, 76 Cal.App.4th at p. 140, 90 Cal.Rptr.2d 119; California Automobile Ins. Co. v. Hogan (2003) 112 Cal.App.4th 1292, 1297-1298, 5 Cal.Rptr.3d 761 (Hogan); Rowe v. Farmers Ins. Exchange (1992) 7 Cal.App.4th 964, 970-972, 9 Cal.Rptr.2d 314 (Rowe); Farmers Ins. Exchange v. Reed (1988) 200 Cal.App.3d 1230, 1233, 248 Cal.Rptr. 11 (Reed); see Croskey, Insurance Litigation, supra, ¶ 7:1227, p. 7D-21; but see State Farm Mut. Auto. Ins. Co. v. Davis (9th Cir.1991) 937 F.2d 1415, 1419, fn. 3.) Consequently, a mere "`but for'" link is insufficient. (Reed, supra, at p. 1233, 248 Cal.Rptr. 11; Croskey, Insurance Litigation, supra, ¶ 7:1227, p. 7D-21.) To hold otherwise would convert auto liability policies into general liability policies. (See Acceptance Ins. Co. v. Syufy Enterprises (1999) 69 Cal.App.4th 321, 327-328, 81 Cal. Rptr.2d 557.) As the court in Webb observed: "The automobile is so much a part of American life that there are few activities in which the `use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract." (Webb, supra, 256 Cal.App.2d at p. 145, 63 Cal.Rptr. 791; accord, Reed, supra, 200 Cal.App.3d at p. 1233, 248 Cal.Rptr. 11.) Coverage based on "use" must encompass an event that reasonably could have been contemplated as falling within the insurance policy. (See State Farm Fire & Cas. Co. v. Camara (1976) 63 Cal. App.3d 48, 54, 133 Cal.Rptr. 600 (Camara); Julie R., supra, 76 Cal.App.4th at p. 139, 90 Cal.Rptr.2d 119.)
Under the predominating cause/substantial factor test, the use of the vehicle must contribute in some way to the injury beyond merely serving as the situs of the injury. Something involving the vehicle's operation, movement, or maintenance, or its loading or unloading must be a contributing cause. (Peters v. Firemen's Ins. Co. (1998) 67 Cal.App.4th 808, 812-813, *812 79 Cal.Rptr.2d 326; Kramer v. State Farm Fire & Casualty Co. (1999) 76 Cal.App.4th 332, 338-339, 90 Cal.Rptr.2d 301 (Kramer); Ins.Code, § 11580.06, subd. (g); see Entz v. Fidelity & Casualty Co. (1966) 64 Cal.2d 379, 380-381, 385, 50 Cal.Rptr. 190, 412 P.2d 382; Croskey, Insurance Litigation, supra, ¶ 7:1229, pp. 7D-22 to 7D-23.) For example, in Partridge, the injury arose out of the "use" of the insured's car. There, the insured drove his car off the paved road and onto rough terrain while holding a gun with a "hair trigger." The car hit a bump. As a result, the gun discharged and wounded a passenger. (Partridge, supra, 10 Cal.3d at pp. 97-98, 101, 109 Cal.Rptr. 811, 514 P.2d 123.) By contrast, in Aetna Casualty & Surety Co. v. Safeco Ins. Co. (1980) 103 Cal.App.3d 694, 163 Cal.Rptr. 219, the injury did not arise out of the insured's "use" of the car. There, a group drove to a target shooting site, parked the car and loaded their guns. An accidental shooting occurred in the car. But the car had been stopped for a few minutes before the shooting, and was simply the situs of the accident. (Id. at pp. 696-697, 700-701, 163 Cal.Rptr. 219.)
Similarly, "`. . . "the mere transportation of a tortfeasor to a site where he commits a tort after departing from the . . . vehicle" does not establish the requisite causal relationship'" between the use of the vehicle and the injury. (Kramer, supra, 76 Cal.App.4th at p. 337, 90 Cal.Rptr.2d 301; accord, Rowe, supra, 7 Cal.App.4th at p. 972, 9 Cal.Rptr.2d 314; Interinsurance Exchange v. Macias (1981) 116 Cal.App.3d 935, 938, 172 Cal.Rptr. 385.)
In line with these decisions, the Legislature generally defined the concept of use of a motor vehicle for liability insurance policies. Pursuant to subdivision (g) of Insurance Code section 11580.06 (added in 1984), "[t]he term `use' when applied to a motor vehicle shall only mean operating, maintaining, loading, or unloading a motor vehicle." (Stats.1984, ch. 341, § 3, p. 1621.)
Applying these principles here, we conclude that Grisham's injury did not result from the use of Vandagriff's truck. The truck did not contribute to the injury beyond merely transporting the dog to a place near the injury site. The situation here is similar to where a vehicle merely transports a tortfeasor to a site, and he commits a tort after departing the vehicle. This situation does not establish "`the requisite causal relationship'" between the use of the vehicle and the injury (Kramer, supra, 76 Cal.App.4th at p. 337, 90 Cal.Rptr.2d 301); nor does this situation encompass a reasonable contemplation of auto liability insurance coverage (Camara, supra, 63 Cal.App.3d at p. 54, 133 Cal.Rptr. 600; Julie R., supra, 76 Cal.App.4th at p. 139, 90 Cal.Rptr.2d 119). Grisham's injury did not result from or in the course of the truck being operated, moved, maintained, loaded or unloaded. Grisham was bit 20 to 25 yards from the truck, well beyond any unloading zone or activity.
Grisham takes issue with our conclusion. He relies on a decision from this court, Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co. (1973) 33 Cal.App.3d 26, 108 Cal.Rptr. 737 (Hartford), and a trio of out-of-state decisions.
In Hartford, a dog that had been riding in the back seat of a car jumped to the front seat and bit a passenger, as the dog and passenger were starting to get out of the car. (Hartford, supra, 33 Cal.App.3d at p. 29, 108 Cal.Rptr. 737.) The policy in Hartford covered injuries "`arising out of the . . . use of the automobile.'" (Id. at p. 30, 108 Cal.Rptr. 737, italics omitted.) We noted that "use" of a vehicle includes its loading and unloading (id. at p. 33, 108 *813 Cal.Rptr. 737), and also noted the injury occurred while the dog was unloading itself from the car (ibid.). We observed that "[d]ogs transported in family cars normally remove themselves from the vehicles when the trips are over." (Ibid.)
Grisham notes Hartford's observation that dogs are commonly transported in family vehicles, which involves a "use" of the vehicle. (Hartford, supra, 33 Cal.App.3d at p. 32, 108 Cal.Rptr. 737.) From this, Grisham argues that State Farm and Vandagriff reasonably could contemplate there would be auto liability coverage here. Vandagriff's dog, Grisham notes, unloaded himself from the truck and ran directly at Grisham, biting him.
Hartford is distinguishable, however. First, as noted in Reed, the injury in Hartford was "directly connected with the physical use of the insured vehicle." (Reed, supra, 200 Cal.App.3d at p. 1235, 248 Cal.Rptr. 11.) The dog bit the passenger as both were trying to leave the car. (Ibid.) Coverage has been found where an injury arises in the course of unloading or exiting from a vehicle. (See Julie R., supra, 76 Cal.App.4th at p. 139, 90 Cal.Rptr.2d 119, and cases cited therein.) Second, Hartford was decided before Partridge. Hartford's causal analysis approximated the broader "any cause in fact" test, which the post-Partridge California appellate decisions have basically rejected. (See Julie R., supra, 76 Cal.App.4th at pp. 140, 144, 90 Cal.Rptr.2d 119; Hogan, supra, 112 Cal.App.4th at pp. 1297-1298, 5 Cal.Rptr.3d 761; see also Croskey, Insurance Litigation, supra, ¶ 7:1227, p. 7D-21.) Along similar lines, Hartford, which involved the coverage phrase "`arising out of the . . . use'" (Hartford, supra, 33 Cal.App.3d at p. 30, 108 Cal.Rptr. 737), relied on a Florida appellate decision that viewed that phrase as much broader than "caused by." (Hartford, supra, 33 Cal.App.3d at p. 32, 108 Cal.Rptr. 737.)
The trio of out-of-state decisions upon which Grisham relies are Farmers Insurance Company of Arizona v. Till (1991) 170 Ariz. 429, 825 P.2d 954 (Till), Diehl v. Cumberland Mut. Fire Ins. Co. (1997) 296 N.J.Super. 231, 686 A.2d 785 (Diehl), and Duvigneaud v. Government Emp. Ins. Co. (La.App.1978) 363 So.2d 1292 (Duvigneaud).
Both Till and Diehl concluded the injuries at issue arose out of the use of an insured car. (Till, supra, 170 Ariz. at pp. 429-430, 432, 825 P.2d 954; Diehl, supra, 296 N.J.Super. at pp. 232-233, 236-237, 686 A.2d 785.) In both cases, a person in (or essentially in) the car was bitten by a dog, and the biting was facilitated by the car's design. (Till, supra, at pp. 429, 432, 825 P.2d 954 [sliding window between dog in camper and bitten passenger in pickup cab failed to block dog]; Diehl, supra, at p. 236, 686 A.2d 785 [biting was facilitated by the height and open design of a pickup truck bed].) In this sense, Till and Diehl are analogous to our decision in Hartford. By contrast, Grisham was not bitten while in Vandagriff's pickup truck pursuant to a design that facilitated such biting; instead, Grisham was 20 to 25 yards from the pickup when he was bitten.
That leaves Duvigneaud, which also concluded that the injury at issue arose out of the use of a car. (Duvigneaud, supra, 363 So.2d at p. 1295.) There a dog jumped out of an open car window and immediately ran into a passing motorbicyclist, injuring the cyclist. (Id. at pp. 1293-1294.) Although Duvigneaud is similar to the present facts, it too is distinguishable. The Duvigneaud court's causal analysis, like this court's in Hartford, approximated the broader "but for/any cause in fact" test rather than the narrower "predominating cause/substantial factor" *814 test used by California appellate courts after Partridge. (Id. at pp. 1294-1295; see Julie R., supra, 76 Cal.App.4th at p. 144, 90 Cal.Rptr.2d 119.)
Duvigneaud does raise another point to consider, though. How do we square our interpretation of "resulting from the . . . use of [the vehicle]" with a situation in which something falls out of a vehicle and causes injury? Can the Vandagriff dog be analogized to this situation? In such a situation, if the item falls out while the vehicle is being operated, moved, maintained, loaded or unloaded, and causes injury, the vehicle is being used and coverage most likely attaches. (Duvigneaud, supra, 363 So.2d at p. 1294.) As we have seen, however, the biting here did not result from or in the course of Vandagriff's truck being operated, moved, maintained, loaded or unloaded. Grisham was bit 20 to 25 yards from the truck, well beyond any unloading zone or activity.
Finally, Grisham argues that Vandagriff was using his truck as a temporary pet storage, and this was a substantial rather than a trivial factor in causing Grisham's injury. Grisham points to the water dish that Vandagriff left for the dogs in the pickup cab. One problem with this argument is that Grisham was not bit when the dogs were being stored in the vehicle. Of course, Grisham would say that is the pointVandagriff was negligently storing the dogs in the truck. Nevertheless, the temporary storage of the dogs in the truck is not much different from their transport in the truck. As we have seen, the transport of the dogs here is akin to the situation of transporting a tortfeasor who departs the vehicle and commits a tort; the tort is not considered to have resulted from the use of the vehicle. (Kramer, supra, 76 Cal.App.4th at p. 337, 90 Cal.Rptr.2d 301; Rowe, supra, 7 Cal.App.4th at p. 972, 9 Cal.Rptr.2d 314.) As we noted in Hartford, it is common for a dog to depart from a vehicle when the trip is over. (Hartford, supra, 33 Cal.App.3d at p. 33, 108 Cal.Rptr. 737.) The fact remains that, at the time of the biting, neither Grisham nor the dog had anything to do with Vandagriff's truck; they were 20 to 25 yards away from it. The issue is not whether Grisham's injury resulted from Vandagriff's negligence, but whether that injury resulted from the use of Vandagriff's truck.
We conclude that Grisham's injury did not result from the use of Vandagriff's truck.

DISPOSITION
The judgment is affirmed.
We concur: NICHOLSON and MORRISON, JJ.