Filed 10/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AMCO INSURANCE COMPANY,<br><br>Defendant and Appellant. | B298798<br><br>(Los Angeles County<br>Super. Ct. No. BC678363) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Edward Rico, Judge.  Affirmed.

Grant, Genovese & Baratta, Lance D. Orloff  for Defendant and Appellant.

Knapp, Peterson & Clarke, Peter J. Senuty for Plaintiff and Respondent.

## INTRODUCTION

A vehicle accident caused a car to crash through a restaurant, injuring two restaurant patrons. The patrons sued the restaurant owner and his landlords, alleging that the property lacked safety measures that would have protected the patrons from this type of injury. Summary judgment was granted for the restaurant owner but denied for the landlords, who knew a similar accident had occurred years earlier but failed to implement safety measures to prevent a recurrence. The landlords settled the action with the restaurant patrons.

The landlords' insurer, respondent Truck Insurance Exchange, then sued the restaurant's insurer, appellant AMCO Insurance Company, for equitable contribution, asserting that AMCO wrongfully denied Truck's request that AMCO defend and indemnify the landlords. The "additional insured" provision in the restaurant's AMCO policy covered the landlords' liability "arising out of" the restaurant owner's "use" of the premises. Following a bench trial on stipulated facts and the parties' briefing, the court found that the landlords' liability arose from the restaurant owner's use of the premises and was therefore covered under the AMCO policy. The court entered judgment for Truck requiring AMCO to pay 50 percent of the settlement amount and costs of defense.

On appeal, AMCO asserts the trial court erred in finding that the landlords' liability "arose from" the restaurant owner's "use" of the premises. AMCO contends that being the mere situs of an accident does not constitute "use" of a premises, and that the summary judgment rulings in the underlying action required the trial court to find that the landlords' liability was not caused by the restaurant owner's use of the premises. We affirm. The

2

phrase "arising from" in a general liability insurance policy requires only a minimal causal connection, which existed here, and the respective liability of the parties is irrelevant to the additional insured provision. AMCO further asserts that the trial court's 50 percent apportionment was erroneous. AMCO did not assert this argument in the trial court, however, so we find it has been forfeited.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The parties*

The parties stipulated to the following facts. Kathy Awad and Raif/Ralph Awad (the Awads) owned a commercial property at the corner of East Wardlow Road and Orange Avenue in Long Beach. The property was built in 1939, and the Awads bought it in 2002. The property has a corner doorway entrance that faces the intersection. Truck issued a business owner's insurance policy with the Awads as named insureds.

In May 2007, a car accident damaged the front door and windows of the property. The Awads repaired the building by replacing the door and windows with a similar door and windows.

In October 2012, Scott Bascon, dba Holé Molé Restaurant,[1] leased the property from the Awads. AMCO issued a business owner's insurance policy naming Bascon dba Holé Molé as the insured. In a provision we discuss in more detail below, the Awads as landlords were listed as additional insureds under the AMCO policy.

---

[1] Throughout the record, the restaurant name is written as Holé Molé, Hole Mole, and Holè Molè. Adopting the name displayed on the restaurant's sign in the photograph in the record, we refer to it as Holé Molé unless spelled otherwise within a quote.

3

B.  *The Smith action*

On June 2, 2013, Travis Smith and Dina Poppleton-Smith were dining at Holé Molé when a car accident occurred in the intersection of East Wardlaw Road and Orange Avenue.  Two cars collided in the intersection, and the "force of the impact caused one of the cars to jump the curb and crash into the restaurant."  According to the Smiths' complaint, the vehicle "crashed through the front doors" of Holé Molé, and continued through the restaurant "until it stopped against the south-east wall, striking [the Smiths] and pinning them to the wall, causing significant injuries."

On November 3, 2014, the Smiths sued Holé Molé and 50 Doe defendants for negligence and premises liability.[2]  They alleged that Holé Molé "failed to take precautionary measures and safeguard the wellbeing of its patrons."  AMCO provided a defense to Bascon/Holé Molé pursuant to the AMCO policy.

On August 11, 2015, the Smiths added the Awads as Doe defendants.  The Smiths asserted that following the similar accident in 2007, the Awads should have protected the property by reinforcing the front door frame and/or installing bollards to prevent a vehicle from entering the property.

The Awads tendered their defense to Truck pursuant to the Truck policy.  On December 11, 2015, Truck tendered the Awads' indemnity and defense to AMCO.  Truck cited language in the parties' lease in which Bascon agreed to "indemnify, hold harmless and defend against all claims and or damages, which may be asserted against landlord, as may be related or incidental to Tenants [*sic*] operations, including and not limited to claims

---

[2] The Smiths later added as a defendant the driver of the car that entered the restaurant.

and or damages asserted by its employees, customers, visitors, etc." AMCO denied coverage, stating, "Our client had no responsibility for the existence or lack of existence of bollards on the property, and has no responsibility for a vehicle losing control on the street and crashing into the restaurant. This loss did not arise out of our client's use or occupancy of the premises." On September 23, 2016, Truck renewed its tender to AMCO, suggesting there was a right to indemnity and defense under the AMCO policy, and asking for a copy of the policy. AMCO again denied coverage.

Bascon and the Awads filed motions for summary judgment in the Smith action. In October 2016, the court granted Bascon's motion, finding that the accident was not foreseeable to Bascon, there was no evidence that Bascon had knowledge of the 2007 incident, and the lease stated that Bascon could not alter the premises without landlord consent. The court denied the Awads' motion. The court found that the Awads had knowledge of the 2007 accident and therefore had "moral blame for not doing anything to prevent a similar accident from occurring." On behalf of the Awads, Truck settled the Smith action for $785,000.

C.    *This action*

1.    *Truck's complaint*

On October 3, 2017, Truck filed this action against AMCO for equitable subrogation, equitable indemnification, equitable contribution, and declaratory relief. Truck asserted that the parties' lease required Bascon to indemnify, defend, and hold harmless the Awads "against all claims and/or damages, which may be asserted against [the Awads], as may be related or incidental to [Holé Molé/Bascon's] operations." Truck also alleged that the lease required the Awads to be listed as

5

additional insureds on Bascon's comprehensive general liability insurance policy.

Truck further alleged that Bascon's AMCO policy included an additional insured endorsement naming the Awads as additional insureds. The AMCO policy stated, "Any person or organization from whom you [Bascon] lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you." Truck alleged that its claims "arise out of the Hole Mole's use of the Property as the plaintiffs in the Smith Action would not have been injured but for Bascon's use of the Property as a restaurant, and their presence on the Property as invitees of Bascon and patrons of Hole Mole." Truck alleged that AMCO wrongfully denied tender of the Awads' defense and failed to indemnify the Awads. Truck alleged damages in the amount paid to settle the Smith action, $785,000, as well as the cost of defending the action, which the parties later agreed was $52,368.15. Truck also sought its costs and attorney fees.

2. *Truck's contentions*

The trial court decided the issue on stipulated facts and the arguments in the parties' briefing. Truck argued in its briefs that the lease for the premises stated, "Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance," and "Tenant herein agrees to indemnify, hold harmless and defend against all claims and/or damages, which may be asserted against landlord, as may be related to or incidental to Tenant[']s operations; including and not limited to claims and/or damages asserted by its employees, customers, visitors, etc." Truck argued that any liability of the Awads was, at least, "incidental to" the operations of the

restaurant.  The lease therefore demonstrated that the parties' intent was that "the insurance provided by Hole Mole to the Awads will be primary for risks incidental to running a restaurant and for injuries to the customers."

Truck further contended that the Awads were entitled to the "additional insureds" coverage on Bascon's AMCO policy. The AMCO policy's additional insured endorsement  stated that the Awads as landlords were additional insureds, and the policy covered any "liability arising out of your [Bascon's] use of that part of the premises leased to you."  Truck asserted that AMCO had a duty to defend and indemnify the Awads because the Smiths "would not have been injured *but for* Bascon's use of the Property as a restaurant, and *but for* their presence on the Property as invitees of Bascon and patrons of Hole Mole.  Thus, as a matter of undisputed facts and law, the claims arise out of the use of the Property as a restaurant."  Truck also asserted, "Had [the Smiths] not been present, as customers, they would not have been injured."

Truck stated that AMCO denied coverage on the basis that Bascon was not liable for the Smiths' injuries.  It argued that AMCO erred when it "equate[d] 'arising out of the use' of the Property with 'arising out of the liability of the named insured.' The two are not coextensive."  Truck also noted that "the Awads were never found to be liable. Rather, Truck settled due to the seriousness of the injuries and the risks of trial, as insurers frequently do."  Truck further argued that "if AMCO meant for the liability of its named insured to be the controlling limitation

7

on coverage for the additional insureds, it should have clearly so stated."[3]

Truck asserted primarily that it was entitled to equitable subrogation, "because it was the intent of the parties that AMCO cover the Awads for the liability that arose out of the use of the premises as a restaurant." In the alternative, Truck requested equitable indemnity, equitable contribution, and declaratory relief.

3.    *AMCO's contentions*

AMCO argued in its briefs that "since AMCO's [i]nsured tenant [Bascon] never had any connection to the alleged dangerous condition in the owner's building, AMCO had no duty" to defend or indemnify the Awads. It asserted that the "AMCO policy did not insure . . . the Awads' liability arising out of their building" that had no connection to Bascon's operation of a restaurant. AMCO stated, "Truck must first prove that AMCO had a duty to defend the Awads in the underlying premises-liability action . . . . If Truck were to prove that AMCO owed a duty to defend, the burden would shift to AMCO to prove that it had no duty to indemnify the Awads. . . ."

AMCO contended that the Smiths' premises liability action was "based on the Awads' breach of its non-delegable duty to maintain its property free of unreasonable dangerous conditions existing on the premises," and the Smiths alleged that "the

_____

[3] Truck also asserted that a structural alteration exclusion in the AMCO policy was not applicable, as it may have related to a finding that the Awads were liable due to the lack of bollards or other structures near the entry of the restaurant. The court found that the structural alteration exception was not applicable under the stipulated facts. The parties do not challenge the court's finding on this issue, and therefore we do not address it.

Awads' duty of care arose because they had actual knowledge of a prior accident which created a duty of care to repair their premises" to prevent a similar accident from recurring. Bascon had no knowledge of the previous accident, and no duty to modify the premises to avoid injuries from a similar accident. AMCO also argued, "[I]t is Res Judicata that Holé Molé was not negligent and did not own the building alleged to have a dangerous condition," and "the issue cannot be relitigated."

AMCO further asserted that the parties' lease did not require AMCO to indemnify the Awads. Although the indemnity provision in the lease could be read to cover the Awads' passive negligence, it did not create a duty to indemnify the Awads' active negligence. Moreover, the lease stated that indemnity of the Awads must be "related to or incidental to [Bascon's] operations," and the car accident did not meet that definition.

AMCO also argued that the Awads were not entitled to "additional insured" coverage under the AMCO policy. AMCO asserted that the Awads' liability did not arise out of Bascon's "use" of the premises; rather, liability arose from the Awads' knowledge of the prior accident and their negligent reconstruction of the property thereafter. AMCO argued, "[T]he Awads' liability to the [Smiths] was not in any manner or to any degree related to Holé Molé's use of the premises. Rather, it was entirely premised on knowledge and actions that were taken six years before Holé Molé ever occupied the premises."

AMCO asked that Truck's complaint be dismissed with prejudice. It also asserted that Truck's claim for subrogation in particular was "simply improper" under the circumstances, and "Truck's only proper claim here, between two primary insurers

9

that insure the same parties (the Awads), is equitable contribution."

4.	*The court's decision*

The court issued an order on February 15, 2019, finding in favor of Truck and ordering damages of $418,684.08. The court explained its reasoning in an accompanying statement of decision. The court rejected AMCO's reasoning, stating, "AMCO's statement of the issue does not comport with general established insurance law. Equitable contribution between insureds [*sic*] need not be based on the comparative negligence of their respective insureds." As for whether the liability arose "out of" Bascon's use of the premises, the court stated, "The court need not engage in extensive analysis to state the obvious. The lawsuits by the injured patrons arose out of their being patrons of the restaurant leased from the landlords. . . . The claims against both the restaurant and the landlords arose out of the use of the premises."

The court concluded, "[T]he court finds that the principles of equitable contribution applies [*sic*] to the issues in this case. AMCO was entitled to dispute coverage albeit wrongly. There is no argument made regarding the appropriateness of the defense costs or the appropriateness of settlement. The court therefore finds that the apportionment should on in [*sic*] equal, 50/50 basis. [Truck] is entitled to recover ½ of the money paid."

5.	*AMCO's objection*

AMCO filed an objection to the trial court's statement of decision. AMCO argued that "the Court's findings critically fail to distinguish between AMCO's alleged duty to defend and duty to indemnify." Noting that the court used the phrase "potential liability" once in the decision, AMCO asserted that a

10

determination of *potential* liability, but not *actual* liability, "triggers AMCO's duty to defend, but does not trigger AMCO's duty to indemnify." Thus the court's finding should have determined that AMCO owed half of the $52,368.15 Truck expended in defending the Awads—not half of Truck's $785,000 settlement payment. AMCO also repeated its arguments that "no part of Holè Molè's use of the premises actually caused" the Smiths' damages, and in light of summary judgment in Bascon's favor, the Awads' settlement "was entirely based on the Awads' use of the premises, and NOT at all based on Holè Molè's 'use of the premises.'" AMCO asked that the court modify its decision to state that AMCO's policy did not cover Truck's $785,000 settlement, and AMCO owed only half of $52,368.15.

Truck filed a written response asserting that AMCO had no legitimate procedural basis for challenging the court's statement of decision with a written objection. Truck also asserted that the court's finding that the Awads' liability arose out of Bascon's use of the premises, and therefore that the Awads were additional insureds under the AMCO policy, "is dispositive for both defense and indemnity." Truck also contended that it "satisfied its burden to show potential coverage," so "the burden of proof shifted to AMCO, as the non-defending insurer," but "AMCO offered no evidence or even argument to assist it in carrying that burden during the trial."

On February 27, 2019, the court issued a short written order overruling AMCO's objection. The court agreed with Truck's contentions that AMCO wrongfully denied the duty to defend, Truck carried its initial burden on that issue, and AMCO failed to meet its burden.

11

6.    *AMCO's motion for new trial or to vacate the judgment*

AMCO filed a notice of intention to move for new trial, or in the alternative, to vacate the judgment.  In its supporting memorandum, AMCO repeated its argument that the court's reasoning justified a finding that AMCO had a duty to defend the Awads based on the *potential* for coverage, but not a duty to indemnify them based on *actual* coverage.  AMCO argued that as a result, the judgment for half of Truck's defense expenses plus the settlement amount was unsupported by the court's reasoning.  AMCO reasoned that "this Court has not yet ruled on AMCO's duty to indemnify Truck's $750,000 [*sic*] settlement."  AMCO argued that the summary judgment in favor of Bascon in the Smith action "establishes as a matter of law that the Awads' liability to the Smiths was completely independent of Holè Molè's use of the Awads' building."  AMCO asserted that as a result, it had no obligation to indemnify Truck based on the additional insured language in AMCO's policy.

Truck opposed AMCO's motion, asserting that its arguments were based on "three fallacies."  First, the court did not find *potential* coverage, it found "that there *was* coverage."  Second, the court in the Smith action did not address whether the injuries to the Smiths arose out of Bascon's use of the premises.  Third, the summary judgment in the Smith action was not relevant to whether the Awads were additional insureds under the AMCO policy.  Truck also asserted that AMCO's motion was procedurally improper, and that AMCO failed to meet its burden to show that the judgment should be set aside.

Following a short hearing, the court denied AMCO's motion.  The court rejected AMCO's argument about potential

12

coverage as "mere wordplay" focusing on "a single word in a single sentence" in the statement of decision, whereas the remainder of that paragraph "makes abundantly clear the court's finding that a clear reading of the Amco endorsement provides actual coverage, and not just potential coverage," for the Smith action. The trial court also rejected AMCO's arguments about the summary judgment in the Smith action, finding that any finding of liability in the Smiths' negligence action "is irrelevant to equitable apportionment of the claim between" AMCO and Truck.

The court entered judgment for Truck in the amount of $418,684.08—half of the cost of the settlement to the Smiths, plus half of the costs of the Awads' defense. The judgment also included costs of suit and prejudgment interest. AMCO timely appealed.

## DISCUSSION

A. *The Awads' liability arose out of Bascon's use of the premises.*

Although AMCO asserts numerous arguments on appeal, each relies on a single contention: The car accident that injured the Smiths was not causally connected to Bascon's "use" of the leased premises; therefore the Awads did not qualify as additional insureds under the AMCO policy, and Truck was not entitled to equitable contribution from AMCO. Because this case was decided on stipulated facts and "the interpretation of the insuring agreement is a question of law, we apply de novo review to any determinations as to that issue." (*Underwriters of Interest Subscribing to Policy Number A15274001 v. ProBuilders Specialty Ins. Co.* (2015) 241 Cal.App.4th 721, 727.)

13

If the Awads qualified as additional insureds under Bascon's AMCO policy, Truck is entitled to equitable contribution from AMCO. Equitable contribution "'arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others.' [Citation.] 'The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others.'" (*Maryland Cas. Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1089.)

As noted above, the additional insured provision of Bascon's AMCO policy stated, "Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you." In other words, the Awads, as landlords, were additional insureds under the AMCO policy, "but only with respect to [the Awads'] liability arising out of [Bascon's] use of . . . the premises." The Awads' liability was not disputed; their settlement of the Smith action is presumptive evidence of their liability. (See *Safeco Ins. Co. of America v. Superior Court* (2006) 140 Cal.App.4th 874, 880.)

Thus, we consider whether the Awads' liability "arose out of" Bascon's "use" of the premises. "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection

14

or incidental relationship." (*Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328 (*Syufy*).)

In *Syufy*, a contractor, C & C, "contracted with Syufy to upgrade the lighting and temperature controls at a theater owned by Syufy." (*Syufy, supra*, 69 Cal.App.4th at p. 324.) C & C had a general liability policy with insurer AIC, which named Syufy as an additional insured with respect to any liability arising out of C & C's work. (*Ibid*.) An employee of C & C sued after being injured by a roof hatch at the theater; the employee alleged that Syufy failed to maintain a safe closing mechanism on the hatch, and failed to warn about the defective hatch. (*Ibid*.) AIC defended Syufy as an additional insured under its policy, and eventually funded a settlement with the employee. (*Id*. at p. 325.) AIC then sued Syufy and its insurer, Reliance, for declaratory relief, indemnification, and equitable contribution. AIC asserted that the employee's injury did not arise out of C & C's work, and therefore Syufy was not an additional insured under the AIC policy. (*Ibid*.) Following a summary judgment in favor of Reliance, AIC appealed.

The appellate court affirmed. C & C's insurance policy with AIC included an additional insured provision providing that Syufy was an additional insured under the policy, "'but only with respect to liability arising out of "your work" for that insured by or for you.' The policy specified that 'you' and 'your' referred to C & C, the named insured." (*Id*. at p. 324.) AIC argued in part that Syufy was not an additional insured under the circumstances, because the employee was injured as he "was leaving the job site, through a roof hatch on which C & C performed no work, and which injured him solely because of Syufy's negligent maintenance." (*Id*. at p. 326.) AIC asserted that "its additional

15

insured endorsement would not apply to Syufy's liability for [the employee's] injury under California case law interpreting the policy term 'arising out of,'" because the employee's injury "was attributable solely to Syufy's negligent maintenance of the roof hatch." (*Id*. at p. 327.)

The Court of Appeal rejected this contention, noting, as quoted above, courts' broad interpretation of the phrase "'arising out of.'" (*Syufy, supra*, 69 Cal.App.4th at p. 328.)  The court found the employee's injury "clearly 'arose out of' the work he was performing on the roof of Syufy's building.  The relationship between the defective hatch and the job was more than incidental, in that [the employee] could not have done the job without passing through the hatch.  The fact that the defect was attributable to Syufy's negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault." (*Id*. at pp. 328-329.)  The court stated that when an insurer "grants coverage for liability 'arising out of' the named insured's work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured." (*Id*. at p. 330.)

The trial court below relied on *Syufy* in reaching its decision, and Truck asserts that *Syufy* is dispositive of the issues in this case.  We agree that its reasoning compels a similar conclusion here.  The Smiths were present when the accident occurred because they were customers of Bascon's restaurant.  Had Bascon not been using the premises as a restaurant, the Smiths would not have been sitting in the building when a car crashed through it.  The Smiths alleged that the property itself was unsafe, because the Awads failed to protect invitees from the type of harm that could occur from a car accident, and the Awads

16

were on notice of such a danger due to the similar 2007 accident. "[A] minimal causal connection will suffice to trigger coverage under an 'arising out of' clause." (*Vitton Construction Co., Inc. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 767 (*Vitton Construction*).) That minimal causal connection was present here.

We are not persuaded by AMCO's argument that "'situs' alone is not use of the 'premises.'" For this proposition, AMCO relies on *Kramer v. State Farm Fire and Cas. Co.* (1999) 76 Cal.App.4th 332 (*Kramer*), but the comparison is not apt. In that case, a couple, the Kramers, purchased from State Farm a homeowners' insurance policy for their residence, and rental dwelling insurance policies for two rental units they owned. Mrs. Kramer's daughter, son-in-law, and grandchildren later sued the Kramers, asserting that Mr. Kramer sexually abused the grandchildren at the three insured locations, and Mrs. Kramer knew of the abuse and failed to protect the children. (*Id.* at pp. 334-335.) State Farm defended the Kramers under their homeowners' policy, but denied coverage under the rental policies. The case was eventually settled for the limits of the homeowners' policy plus a $65,000 contribution from the Kramers.

The Kramers then sued State Farm, alleging that it wrongfully denied coverage under the rental policies, which "included 'business liability' coverage against claims for accidental injuries arising 'from the ownership, maintenance, or use of the insured premises . . . .'" (*Kramer, supra,* 76 Cal.App.4th p. 334.) After State Farm successfully moved for summary judgment, the Kramers appealed. The appellate court considered "whether, for purposes of insurance coverage, child

17

molestation is an injury arising from the 'ownership, maintenance, or use' of the premises on which the molestation occurs." (*Ibid*.)  The court noted that with respect to insurance policies on vehicles, there was a "general principle that injury . . . does not arise from the 'ownership, maintenance, or use' of a vehicle absent a showing that the use of the vehicle contributed in some way to the injury, beyond merely serving as the situs for the activity." (*Id*. at p. 338.)  The Kramers asserted that coverage for a real property should not require a similar connection between the injury and the property, but the court rejected this contention:  "[C]onstruing residential coverage to apply to any tortious conduct occurring on the premises would in effect render nugatory the language specifically limiting coverage to injury arising out of the 'ownership, maintenance, or use' of the property." (*Id*. at p. 340.)

Thus, the court considered "how to distinguish between an injury which is sufficiently causally related to the 'use' of residential property to warrant coverage, and a noncovered injury in which the premises merely serve as a situs." (*Kramer, supra*, 76 Cal.App.4th at p. 340.)  The court found that the rental properties were merely a situs because there was "no indication that the [grandchildren] were exposed to any peculiar risk of molestation due to the use of the" rental properties, and the abuse had occurred at other locations, so the "molestations thus could, and in fact would, have occurred even if the Kramers had not owned, maintained, or used" the rental properties.  (*Id*. at pp. 340-341.)  The court concluded, "[T]he covered residences in this case were merely two of several locations at which the Kramers had custody and control of the children.  The required causal connection between the use of those particular premises and the

18

tortious activity causing the injury therefore was lacking." (*Id*. at p. 341.) The court therefore affirmed the judgment in favor of State Farm.

Here, by contrast, there is the requisite minimal causal connection between the property and the injuries. The Smiths were on the premises as customers of Holé Molé. Thus, Bascon's "use" of the premises was the reason the Smiths were present when the car accident occurred. Moreover, the Smiths' theory of liability against the Awads was that the property itself was dangerous, in that the Awads knew that a car could crash into the building but failed to take steps to prevent harm from such an event. These facts are sufficient to link the "factual situation with the event creating liability," establishing the requisite "minimal causal connection or incidental relationship." (*Syufy, supra,* 69 Cal.App.4th at p. 328.)

AMCO also cites several cases interpreting vehicle insurance policies with coverage limited to "use" of the vehicle, which have applied the "predominating cause/substantial factor test." (See, e.g., *State Farm Mutual Automobile Ins. Co. v. Grisham* (2004) 122 Cal.App.4th 563, 566-567 (*Grisham*); *American Nat. Property and Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 140 (*Julie R.*); *R. A. Stuchbery & Others Syndicate 1096 v. Redland Ins. Co.* (2007) 154 Cal.App.4th 796, 802 (*R.A. Stuchbery*).) Under this test, the "use of the vehicle [must] be a "'predominating cause" or a "substantial factor" in causing the injury.'" (*Julie R., supra,* 76 Cal.App.4th at p. 140.) "Under this test, a mere 'but for' connection between the use of the vehicle and the alleged injuries is insufficient to bring the claim within the scope of coverage. 'To hold otherwise would convert auto liability policies into general liability policies.'" (*R.*

19

A. *Stuchbery, supra*, 154 Cal.App.4th at p. 802, quoting *Grisham, supra*, 122 Cal.App.4th at p. 567.)

As Truck points out, however, the AMCO policy *was* a type of general liability policy. We see no basis to construe it as narrowly as the vehicle policies discussed in the above cases. As the court in *Syufy* noted, in vehicle cases courts have taken "pains to distinguish automobile liability insurance from general liability insurance, and accordingly to focus on the 'use' of a vehicle as a factor in the injury." (*Syufy, supra*, 69 Cal.App.4th at pp. 327-328.) No such limitation is required here.

AMCO further asserts that the summary judgment in favor of Bascon in the Smith action "establishes as a matter of law that the Awads' premises liability does not arise out of" Bascon's use of the premises. AMCO asserts that "under res judicata principles, the Smith court's judgment in favor of Holè Molè precludes Truck's claim" for equitable contribution. In essence, AMCO asserts that because Bascon was not deemed liable for the Smiths' injuries, the Awads' liability did not arise from Bascon's use of the premises. Therefore, the Awads were not additional insureds under the AMCO policy.

This argument is unpersuasive. First, AMCO's additional insured endorsement does not rely on the relative liabilities of the parties. As the court in *Syufy* observed, "Insurance companies are free to, and commonly have, issued additional insured endorsements that specifically limit coverage to situations in which the additional insured is faced with vicarious liability for negligent conduct by the named insured. [Citations.] We believe the better view is that when an insurer chooses not to use such clearly limited language in an additional insured clause, but instead grants coverage for liability 'arising out of' the named

20

insured's work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured." (*Syufy, supra*, 69 Cal.App.4th at p. 330.)

Here, AMCO did not write its additional insured endorsement to bar coverage where the tenant was not at fault. To the contrary, the endorsement references only the landlords' liability, providing coverage "with respect to [the landlords'] liability arising out of [the tenant's] use" of the property. "[T]he fact that an accident is not attributable to the named insured's negligence is *irrelevant* when the additional insured endorsement does not purport to allocate or restrict coverage according to fault." (*Vitton Construction, supra*, 110 Cal.App.4th at pp. 767-768 [emphasis in original]; see also *Fireman's Fund Ins. Companies v. Atlantic Richfield Co.* (2001) 94 Cal.App.4th 842, 852-853 ["The cases which comprise the majority view . . . specifically reject an interpretation that limits the phrase 'liability arising out of' to cover only vicarious liability of the additional insured"]; *Davis v. Farmers Ins. Group* (2005) 134 Cal.App.4th 100, 106-107 ["the term 'arising out of' links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy"].)

Second, the doctrine of res judicata does not apply here. "The claim preclusion doctrine, formerly called res judicata," arises when "'a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.) Apparently recognizing this issue, AMCO changes its argument in its reply brief to assert for the first time that collateral estoppel or issue preclusion applies

instead, preventing "relitigation" of previously decided issues. Even setting aside the impropriety of this belated contention, this issue was never decided in the Smith action. The Smith court found no triable issue of fact as to whether Bascon was liable to the Smiths, but did not determine the issue relevant here: whether the Awads were additional insureds under the terms of the AMCO policy.

Thus, we find that based on the stipulated facts, the Awads' liability arose from Bascon's use of the premises, the Awads were therefore additional insureds under the AMCO policy, and Truck was entitled to equitable contribution.

B.    *AMCO forfeited its contention that the court's contribution allocation was erroneous.*

AMCO asserts for the first time on appeal that the trial court erred by apportioning AMCO's equitable contribution at 50 percent, without prorating the award based on the parties' respective policy limits. It argues that because Truck had a $2 million policy limit, and AMCO had a $1 million policy limit, "the trial court should have allocated one-third of the defense and/or indemnity expenses to AMCO, because AMCO's policy provided one-third of the $3 million in aggregate liability coverage available to the Awads."

Truck correctly points out that AMCO did not make this argument in any of its briefing in the trial court, and asserts that AMCO has therefore forfeited any claim of error. In its reply brief, AMCO asserts that because neither party requested a 50 percent allocation—Truck asked for 100 percent and AMCO asked for zero percent—AMCO was not required to assert below that a 50 percent allocation would be improper.

By failing to assert below that the trial court's allocation was erroneous, AMCO has forfeited this contention.  Despite ample opportunity to challenge the court's allocation in its extensive objections to the court's decision and motion for new trial, AMCO never suggested to the trial court that the allocation of contribution was erroneous.  "'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' . . .  Such arguments raised for the first time on appeal are generally deemed forfeited."  (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.)

## DISPOSITION

The judgment is affirmed.  Truck is entitled to recover its costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.

23